GRISWOLD *v.* JACKSON and another.

In order that a decree may be pleaded as a bar in a second suit, it must bind the party against whom it is pleaded and be conclusive upon his rights or upon the rights of those under whom he claims ; and can be no bar against a party or those claiming under him where he is not a party in the first suit.

Where a person holds hypothecated property and a tender is made of the amount due upon it and he refuses the tender, he makes the property so far his own as to run the chance of after depreciation and will be obliged to take it in full satisfaction should it prove worthless–and should there have been a surety, the latter then becomes released.

Bill filed in relation to a suit at law which had got to judgment. By the time the answer came in, execution had issued and the bail became fixed ; and this was mentioned in the answer. But the court could not act up n it under this bill. The complainant should have filed a supplemental bill, asking for such relief as the new state of things would warrant.

The defendant, Caroline Dunham, not having redeemed the stock in the Williamsburgh Ferry Company, according to the decree made in the cause, wherein she was complainant, against the defendant Daniel Jackson—affirmed on appeal (see the case in 6 Wend. R. 22.) ; and the defendant Jackson having afterwards sued the present complainant at law upon his due bill given for the money advanced on the pledge of the stock, the complainant filed his bill in this cause to restrain the suit at law and to have the value of the stock applied in extinguishment of the debt.

*May 19th.*
*1835.*

*Decree of former suit in bar. Surety.*

The bill alleged the borrowing of divers sums of money by the complainant of the defendant Daniel Jackson, and, among others, the sum of two hundred dollars at one time, for which he pledged to the defendant ten shares of the stock and that he had previously transferred to him one other share to enable him to hold the office of director in the Ferry Company ; that these eleven shares were borrowed by the complainant of Caroline Dunham and the same belonged to her, but the complainant had authority from her to pledge them. That subsequently, the complainant, as agent for Caroline Dunham and on her account, borrowed

of the defendant other sums, amounting to five hundred dollars, and transferred to him, by way of pledge and security for the repayment, forty other shares of the stock belonging to Caroline Dunham; that afterwards, in the month of March one thousand eight hundred and twenty-seven, the complainant caused to be tendered to the defendant the amount of the advances, being, altogether, about thirteen hundred dollars and demanded a re-transfer of the stock to Caroline Dunham, which the defendant refused, the stock being then worth eighty per cent. on the par value and since then it had become of no value whatever. That notwithstanding all this, the defendant had commenced an action at law against the complainant to recover the amount of his advances; and had held him to bail. The bill prayed that the defendant, Daniel Jackson, might be enjoined from prosecuting his suit at law and the complainant be indemnified for the depreciation of the said stock or of the eleven shares thereof or might have such other relief as would be agreeable to equity.

The answer of the defendant, Daniel Jackson, denied that the complainant was the agent of Caroline Dunham, in these transactions; and insisted that, although her name was used in his business operations generally, it was so done for the purpose of disguising or concealing his own interest therein from his creditors, he being an insolvent debtor—and that when he applied for the loan of five hundred dollars on pledge of the forty shares of stock, it was on his own behalf and not on her account, and the defendant did not suppose the complainant was acting (in obtaining the money) for any other person than for himself. That, at that time, the complainant proposed that he, and not Caroline Dunham, would pledge the forty shares for securing the repayment, not only of that amount but of all the moneys previously borrowed by him of the defendant. That he had previously, on the occasion of borrowing two hundred dollars, delivered to him a script for ten shares in the defendant's name as a security for the repayment of the sum then loaned; and when the loan of five hundred dollars was made and the script for the forty shares was delivered, it was understood and agreed between them that the same were to remain subject to the

repayment of all his said advances, for which the complain-
ant gave him due bills and receipts in his own name as evi-
dences of his indebtedness on account thereof; nor did the
defendant have any notice or information or any reason to
suppose the forty shares of stock were the property of any
other person than the complainant until sometime after ad-
vancing the last portion of the five hundred dollars and
about the middle of the month of March, one thousand eight
hundred and twenty-seven, when, for the first time, he was
informed that the forty shares of stock were the property of
Caroline Dunham and then, upon examination of the books
of the Williamsburgh Ferry Company, it appeared that the
forty shares had been transferred to him by her: "although
this defendant believed, notwithstanding, that they were, so
far as regarded the equitable title thereto, the property of the
complainant and wholly under his control and that Caroline
Dunham was possessed thereof in trust for the complainant
and he had, in fact, the sole management thereof." With
respect to one share of the stock alleged to have been trans-
ferred to the defendant, in order to render him eligible as a
director of the company, the answer admitted the fact, al-
though the defendant said he did not know of it until some
time after it took place; but whether this one share and the
ten shares were borrowed from Caroline Dunham by the
complainant or belonged to her, the defendant was entirely
ignorant. He insisted, however, that subsequently to the
transfers it was well understood between him and the
complainant that the eleven shares were to be held by him
in pledge for the whole amount due him from the com-
plainant. The answer then proceeded to deny the tender
or offer of payment as alleged in the bill, except as to five
hundred dollars, which he, the defendant, admitted was of-
fered to be repaid and he was requested to assign the stock
on payment of that sum and the complainant did not offer
to pay the whole amount of one thousand and three hundred
dollars or make any offer whatever, other than to pay the
five hundred dollars upon having a retransfer of the stock
which was declined by the defendant. That he (the defen-
dant) had always insisted, and he still insisted " that the
loans were made to the complainant on his own account
and that he, the defendant, had not only frequently, but al-

1835.

GRISWOLD
v.
JACKSON.

ways, refused to recognize Caroline Dunham as having any thing to do with the transaction." The answer then referred to the filing of the bill against him in this court by Caroline Dunham to redeem the forty shares of stock, the proceedings in the suit, and the decree therein for redemption upon her paying to him the amount, not only of the five hundred dollars, but of his other advances and if not paid within three months, together with the costs, she was to be foreclosed of all equity of redemption and her bill was to be dismissed with costs—which decree, being affirmed on appeal and she not having redeemed, the defendant set it up in bar of all relief sought or claimed by the complainant in this suit. He admitted the stock had become of no value ; and that he had sued the complainant at law and held him to bail and, at the time of putting in the answer, had recovered a judgment against him in the action for one thousand four hundred and twenty-one dollars and fifty-one cents damages and costs.

A provisional injunction had been granted on the filing of the bill, permitting the defendant to go to trial and judgment at law. On the coming in of the answer under oath (although the oath had been waived by the bill) the injunction was dissolved, on the ground of the denial of the tender and there being no affidavit of a witness filed with the bill to support the allegation of such tender.

Proofs, however, had been taken in relation to this alleged tender and also as to other matters, in order to show the intrinsic value of the stock and the amount which Caroline Dunham or the complainant, acting in her name, could have realized for the shares in question at the time of such tender.

Mr. Tracy's testimony, on the subject of the tender, went further than it did on his former examination in the cause of *Dunham* v. *Jackson*. It was held in that case, both by the chancellor and the court of Errors, that what was represented by Mr. Tracy and another witness to have taken place did not amount to a lawful tender of the money. But the testimony now (in the opinion of this court) came up to the point and showed that a sufficient tender was made within the admitted doctrine of the cases cited and recognized by Mr. Justice Marcy and as to what constituted a

legal tender when the money was not actually produced : 6 Wend. 34. It now appeared that the actual production of the money was expressly waived or agreed to be dispensed with by the defendant.

Mr. *Field* and Mr. *R. Sedgwick*, for the complainant.

Mr. *S. A. Foote*, for the defendant Daniel Jackson.

THE VICE-CHANCELLOR :—The fact of a sufficient tender must, for the present, be deemed established; and this is very important to the complainant's case : for without it his bill could not be supported for the purpose of throwing the loss, arising from the subsequent depreciation of the stock, upon the defendant.

The question nevertheless arises : what right has the complainant to file a bill for this purpose ?

It appears to me that whether he be viewed in the light in which the bill represents him, that is to say, as an agent of Caroline Dunham, raising the money on the pledge of the stock as belonging to her and for her account, making himself personally liable for the repayment and therefore standing in the character of a surety or whether he be considered, as the answer insists he was, the equitable owner of the stock and entitled to all the beneficial interest in it, that this can make no difference in respect to the principal ground of defence, namely, that the proceedings and decree in the former suit are a bar.

It is objected, that in respect to the forty shares of stock, the decree in the former cause settled the rights of the parties and protects the defendants from all liability to account for the value. In the former suit it is true that Caroline Dunham failed in throwing the loss, arising from the depreciation of stock, upon the defendant, because the evidence fell short of proving a lawful tender of the money so as to entitle her to a return of the shares at a time when they were worth to her eighty per cent. of their par value : and as the cause stood upon the evidence, the court could do no more than ascertain the amount of the indebtedness for which the stock was pledged and decree a redemption upon

payment of such amount—and in default of payment hold her foreclosed of all right afterwards to redeem. The effect of her omission to redeem under this decree was to vest the defendant with the absolute ownership of the forty shares (for it did not extend to the other eleven) and he had then a right to dispose of the stock as he should think proper, giving credit for the value and looking to those who were personally liable for the whole or balance of his debt.

If such recourse were had to Caroline Dunham, she would be precluded from again calling in question the fact of a tender and claiming to be allowed the value of the stock at the time : because, as between herself and the defendant, it was a matter *res judicata*, and all she could claim would be a credit for the value at the time it became the defendant's property by the foreclosure. But when recourse is had to the complainant, it appears to me he is not in a situation to be precluded by the former decree. He was not a party to the suit in which it was made; and I do not perceive how he can be bound by the adjudication on the question of tender. In order that the decree may be pleaded or set up as a bar, it is necessary it should bind the party against whom it is pleaded : but no one can be bound by a decree unless he is a party to the suit or the representative of a party or one who can claim in his right the same equity already passed upon. Hence, the general proposition that a former decree may be pleaded in bar to a new bill relative to the same matter between the same parties ; and the converse of the rule is equally true that a former decree cannot be so pleaded, unless it be conclusive upon the rights of the plaintiff in the second bill or of those under whom he claimed : Mitford, 4 ed. 238 ; Beames on Pleas, 211. Upon this principle it was held by Lord Hardwicke, in *Atkinson* v. *Turner*, Barnard. 74, that where the plaintiff in the second suit was no party to the suit in which the decree was made, such decree could not be set up in bar ; and one reason may be found in *Doyley* v. *Smyth*, 2 Ch. Ca. 119, where a dismission was pleaded in bar to a new bill filed by a third person on the ground of the same equity—and the plea was overruled : because the plaintiff in the new bill could not have a bill of review of the former decree, he not being a

party, although the new bill and the former one were founded upon the same equity. In *Neafie* v. *Neafie,* 7 J. C. R. 1, Chancellor Kent had occasion to examine the effect of a decree of dismission of a former bill on the merits (and the decree in the suit of Caroline Dunham was a decree of dismission, although, at the same time, it foreclosed her equity of redemption) and he appears to have considered that to render, a dismission a technical bar, it must be an absolute " decision upon the same point or matter and the new bill " must be by the same plaintiff or his representatives against " the same defendant or his representatives." In other respects, also, I think the reasoning of Chancellor Kent, in *Neafie* v. *Neafie,* has an important bearing upon the point under consideration and serves to show that the complainant cannot be precluded, by the former decree, from filing a bill for the relief which is now sought. Other cases may be mentioned to elucidate the principle still further—as where a mortgagee forecloses the equity of redemption against the mortgagor, without making a subsequent mortgagee or incumbrancer a party to the suit: such decree cannot be pleaded or set up in bar of a bill filed by the second mortgagee or incumbrancer to redeem; and the reason is, because he was not made a party to the first suit. This has been held, even where the first mortgagee had no notice of the second mortgage or incumbrance when he filed his bill and took the decree: *Godfrey* v. *Chadwell,* 2 Vern. 601, *Morrett* v. *Westerne,* Ib. 663. In such cases it may be said that the equity of the second mortgagee is of the same nature as the mortgagor's : a right to redeem from the first mortgage ; and yet, by the decree, the one is foreclosed or barred of his right and the first mortagee is apparently quieted in the possession and enjoyment of the estate. But it is only so with respect to the party to the suit and he who was not a party and has a distinct equity of his own is still at liberty to enforce it ; and, notwithstanding one decree of foreclosure, the property is still liable to be redeemed by those having claims who were not made parties to the suit for that purpose. If, therefore, there are any circumstances in this case to give the complainant a stand-

ing in court to sustain his bill, I am of opinion the proceedings and decree in the former suit of Caroline Dunham present no technical bar to his relief.

Viewing the complainant in the light of an agent for Caroline Dunham in the transaction, in relation to the pledge of the forty shares of stock, and as a surety for her in consequence of making himself personally liable by his due-bills for the money borrowed, and there is sufficient equity in this case to give him a standing in court.

The general doctrine with respect to the right of a surety in equity to have the benefit of any collateral security or pledge held by the creditor delivered up to him upon his paying the debt and in some cases to have the creditor turned round to pursue and exhaust his remedy against the property or thing pledged to him by the principal debtor before compelling the surety to pay, is too well understood to need any explanation here. The complainant is sued at law for the debt for which the stock was pledged. It can be of no use to him now to have it delivered up or retransferred ; and nothing can be realized from it in the hand of the defendant towards reducing or extinguishing the debt. It is, indeed, entirely lost. By the tender of the money and the defendant's refusal to deliver up the property when a value was attached to it, the defendant must be considered as making it his own ; and any depreciation from thenceforth must necessarily be borne by him. If Caroline Dunham had proved the tender, there could have been no doubt but such would have been the result. Her cause turned upon that point and it failed, because her proof was defective. There is no deficiency of proof in the present case ; and if the complainant be considered as a surety called upon to pay, is he not entitled to similar relief? It appears to be settled that the equity of a surety to which I have alluded will be extended to relieve him from his suretyship, without payment of the money, when the creditor has, by his own act, destroyed the pledge or rendered the collateral security which he had taken of no avail or has put it out of his power to give the surety the benefit of the substitution. The case of *Hayes* v. *Ward*, 4 J. C. R. 123, contains all that is necessary to be said upon the subject. There the defendant, a

creditor upon promissory note endorsed by the plaintiff without consideration—and therefore a mere surety—had taken from the maker of the note a bond and mortgage as collateral security for the debt. He, nevertheless, sued the endorser at law without resorting to the maker of the note or the mortgage security ; and upon a bill filed by the endorser to stay the suit at law and to be relieved from the payment of the note upon the ground that the defendant, by his voluntary act, had impaired the security of the mortgage by infecting it with usury and had thus rendered it unavailable to the complainant, in case he should pay the note and be substituted as the holder of the mortgage for his indemnity, the court enjoined proceedings in the suit at law until the defendant should make a fair experiment with his remedy upon the mortgage. This case did not, necessarily, in the then stage of it, call for a decision upon the point which is now presented : for the court went no further than to grant a temporary injunction until the effect of a proceeding on the mortgage and its validity could be tried. If it failed by reason of the alleged usury and the defendant should then resort again to the surety on the note, it would be time enough to decide whether he should pay it. But the chancellor states the general principles founded on equity and natural justice which the court should act upon in such cases—and these are that a mortgage or other collateral security taken by the creditor is taken and held in trust as well for the secondary interest of the surety as for the more direct and immediate benefit of the creditor and the latter must do no wilful act to poison it in the first instance or to destroy or cancel it afterwards ; and if he has destroyed the validity or value of his own security taken from the principal debtor, he cannot have recourse to the surety : because he has voluntarily disabled himself from affording to the surety the requisite substitution. This right of substitution is a valuable right belonging to the surety ; and the creditor must do nothing to impair it. The very taking of that security by him may have excited confidence in the surety and deprived him of the opportunity of taking other and sound security for his own protection.

These principles, which are undoubtedly correct, apply

to the present case, considering the complainant as a surety and the fact of a tender to be established—and hence arises an equity to support the present bill. And if he be regarded, not in the character of a surety, but as the beneficial and equitable owner of the stock, called upon as the principal debtor to pay the money borrowed, still I do not perceive he stands in a more unfavorable position, with respect to equitable relief. The property pledged has been lost to him by the defendant's refusal to return it upon demand and tender of his whole debt ; and he can have no right to sue for and recover such debt without making a proper allowance for the value of the pledge which he must be considered as having converted to his own use. The complainant does not seek to redeem, but to stay proceedings at law and to have the value of the stock, as it was at the time of the tender, applied in compensation or extinguishment of the debt. There seems to be no doubt but the value of it at that time to the owner was more than sufficient for the purpose ; and in every view which I am able to take of the case, I have been led to the conclusion that the complainant is entitled to have the value so applied.

It was suggested, upon the hearing, that after the injunction was dissolved, an execution had issued upon the judgment and the complainant's bail became fixed and were compelled to pay the debt ; and I am asked to decree an account and restitution of the money. I can take no notice of the suggestion. If the fact be as stated and it is properly a matter which could come before this court, the complainant should have filed a supplemental bill, asking for such relief as this new state of things might warrant. As the case stands upon the bill originally filed, no other decree can be made than that the defendant Daniel Jackson be perpetually enjoined from proceeding at law to enforce the payment of the debt which, according to the answer, has gone to judgment.

A reference to take an account would seem to be unnecessary ; and upon this bill I cannot decree restitution to the complainant or his bail. The defendant must pay the costs of the present suit.