884 WEST END AVENUE CORPORATION, Appellant, *v.* ROBERT PEARLMAN, Respondent.

First Department, April 21, 1922.

Landlord and tenant — covenant in lease providing for immediate payment of all rent reserved for balance of term and resumption of possession by landlord, in case, among other things, tenant should vacate or violate any covenant in lease provides for penalty and is unenforcible — recovery of one month's rent actually due not allowed where plaintiff's attorney refused to treat case as action for same — when amount fixed as liquidated damages will be treated as penalty — intent of parties governs.

A covenant in a lease providing for immediate payment of all the rent reserved in the lease for the balance of the term, together with certain other charges and resumption of possession by the landlord, with no obligation upon him to relet and account to the tenant for rent obtained thereby, in case, among other things, the tenant should vacate the premises or violate any covenant in the lease, some of which are most trivial, involving either no damage whatever or a nominal amount, provides for a penalty and is unenforcible.

In an action to enforce such covenant, even one month's rent which is actually due may not be recovered where plaintiff's attorney declines to press the case as an action for the same at the trial.

Where a contract contains a number of covenants of different degrees of importance and the loss resulting from the breach of some of them will be clearly disproportionate to the sum sought to be fixed as liquidated damages, especially where the loss in some cases is readily ascertainable, such sum will be treated as a penalty.

Whether a sum is to be treated as liquidated damages or as a penalty depends upon the intent of the parties to a contract as disclosed by the situation and by the terms of the instrument.

Appeal by the plaintiff, 884 West End Avenue Corporation, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of June, 1921, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Ernst, Fox & Cane* [*Melville H. Cane* of counsel], for the appellant.

*Louis B. Brodsky* of counsel, for the respondent.

Dowling, J.:

The complaint herein alleges that on or about November 17, 1919, plaintiff and defendant entered into a written lease, whereby plaintiff leased to defendant the apartment known as No. 122 in the premises 884 West End avenue, borough of Manhattan, city of New York, for the term of five years, commencing October 1, 1920, and ending September 30, 1925, at the annual rental of $4,500, payable in equal monthly installments of $375 in advance on the first day of each and every month during said term. The lease, among other promises, covenants and conditions, contained the following:

"*First.* The tenant hereby agrees to pay the rent as above stipulated without any deduction, fraud or delay, and the tenant also agrees that if said rent is not paid at the time and in the manner above provided, or if default shall be made in any covenant or agreement herein contained, or if the said premises or any part thereof shall become vacant during the term hereby demised, or if this lease is terminated by the landlord as provided in Article 15th hereof, the landlord may resume possession of said premises by summary proceedings to dispossess or otherwise, without notice to the tenant, which notice is hereby expressly waived. And in the event of the landlord so resuming possession, an amount equal to the whole of the rent herein reserved for the balance of the term as herein originally demised, shall thereupon become immediately due and payable by the tenant to the landlord, and the tenant hereby expressly agrees that he will forthwith pay the same to the landlord and that he will also forthwith pay to the landlord any damage and expense which it may suffer in resuming possession and reletting said premises, including cost of redecorating said premises and putting the same in rentable condition, the cost of advertising and a reasonable commission for reletting, and the landlord agrees that if it thereafter relets said premises, which, in its option, it is hereby expressly authorized to do either by written lease or otherwise, and the tenant has made the payments as in this article provided, the landlord will pay to the tenant on the last day of each month during the balance of the term herein

First Department, April, 1922.                    [Vol. 201

originally demised, the net amount received by said landlord during said month upon such reletting."

The complaint further alleges that defendant entered into possession and occupied the apartment until about December 30, 1920; that during December, 1920, defendant moved from the apartment, and it thereupon became vacant; that on January 1, 1921, pursuant to the terms of the lease, there became due and payable to plaintiff the sum of $375, the installment of rent for the month of January, 1921, which, although duly demanded, defendant has failed, refused and neglected to pay; that on January 1, 1921, there remained unexpired four years and nine months of the term originally demised in the lease, and by reason of the vacancy in said apartment and the non-payment of the January, 1921, installment of rent, the rent for the unexpired term, amounting to $21,750, became immediately due and payable, pursuant to the clause above quoted; that plaintiff duly performed all the terms, covenants and conditions of the agreement on its part to be kept and performed, and that demand has been duly made for payment of the sum of $21,750, which has been refused. Judgment is asked in the sum of $21,750, with interest from January 1, 1921, and costs.

The answer admits the making of the lease containing the clause in question, and occupancy of the apartment until December, 1920, but denies the other allegations of the complaint. It also sets up four separate defenses: The first alleges fraud and misrepresentation attending the execution of the lease; the second sets up that the walls of the building were poorly constructed and the rain came through; that the premises were excessively heated by reason of certain steam pipes running through the apartment, and that the apartment was uninhabitable, and the unhealthful condition amounted to a nuisance, forcing defendant to abandon the premises; the third alleges that, because of the facts set out in the second defense, he was evicted from the apartment and put to the expense of removing therefrom, whereby he suffered damage in the sum of $1,235; the fourth defense alleges by way of setoff that, after the abandonment of the premises, plaintiff took possession of the same and rented the premises on February 1, 1921, at a rental of $3,500 per annum, to a responsible person, and that plaintiff has collected the rent at that rate since said date.

The plaintiff's case consisted of the testimony of the manager of the premises in question who proved the defendant's entry into possession of apartment 122 therein about the middle of September under the written lease, which was received in evidence, and his departure therefrom on December thirtieth. It was conceded that the January rent, which became due January first, had been

demanded and was not paid. It was also shown that on January first the unexpired portion of the lease was four years and nine months. On this testimony the plaintiff rested, and defendant moved to dismiss the complaint on the ground that plaintiff had failed to make out a cause of action, as the article of the lease before set forth, making the entire amount due and payable in the event of a default, amounted to a forfeiture or penalty, and was illegal. The learned trial court held that the article of the lease in question was unconscionable and could not be enforced, for the reasons, among others: (1) That it was an attempt to reserve all rent for the unexpired period, with no duty imposed upon the landlord to make any effort to reduce the damage by renting the premises, if they could be rented; (2) that the article did not purport to fix any sum to be paid the landlord as liquidated damages for a breach; (3) that the provision allowing the landlord to charge against the tenant the cost of redecorating the premises (whether needed or not) for a new tenant was unconscionable; (4) that no actual damage had been proven; (5) that the article provided for the payment of a penalty and not for compensation. Motions were made by plaintiff to amend the complaint and for leave to withdraw a juror, which were denied, and no exception thereto was taken. The court then dismissed the complaint, and to that exception was taken.

An examination of the article of the lease in question shows that the following are the eventualities, in any of which the landlord may resume possession of the premises and become entitled to payment of an amount equal to the whole of the rent therein reserved ($22,500) less rent actually paid and plus (a) any damage and expenses which the landlord may suffer in resuming possession and reletting the premises; (b) the cost of redecorating the premises and putting them in rentable condition; (c) the cost of advertising; (d) a reasonable commission for reletting:

*First.* Failure to pay any monthly installment of rent when due;

*Second.* Default in any covenant or agreement of the lease;

*Third.* If the premises or any part thereof shall become vacant during the term;

*Fourth.* If the lease is terminated as provided by article 15 thereof.

As to the first provision, a default of one day in making payment of a month's rent would make the whole amount of rent for the balance of the term due.

As to the second provision, the lease is made upon many conditions which the tenant covenants to perform, embraced in sixteen articles, some important, many trivial, such as not driving picture

or other nails into the walls or woodwork of the premises, nor allowing the same to be done; making disturbing noises or singing after ten P. M. These cover fourteen printed pages. The 7th article contains twenty-two rules and regulations with which the tenant, his family, servants and visitors are to comply.

As to the third provision, it is to be noted that, if the tenant moves out, he is obligated to pay the rent for the balance of the term in a lump sum, even if not in default and ready, willing and able to continue his monthly payments.

As to the fourth provision, this refers to an article of the lease under which the landlord is entitled to terminate the lease on giving three days' notice and to take possession of the premises and institute dispossess proceedings in the following cases: (1) If the landlord shall deem objectionable or improper any conduct on the part of the tenant, the occupants of the apartment leased thereby or visitors thereto; (2) if the tenant violates the restriction against assignment or mortgaging of this lease or subletting, or if the tenant shall permit the premises to be occupied by persons or for purposes other than those allowed by this lease, or (3) if the tenant violates any covenant, agreement, condition, rule or regulation therein contained. Furthermore, while the tenant is required to pay the rent for the balance of the term at once, if the landlord relets the premises he is only to pay over the rent received by him from month to month as received, thus making the tenant lose interest on the balance of the sum deposited over the rent as turned over to him. Nor is the landlord obligated to relet or to make any effort so to do. It will be seen that this lease, most exhaustive in the restrictions and burdens placed upon the tenant, leaves him at the mercy of the landlord, who for breach of the most trivial requirement has the right to declare a default and to call for payment of the rent for the remainder of the term. Some of the conditions under which this may happen are so insignificant and trivial, involving either no damage whatever or a nominal amount, as to show that the provision for the payment of the whole rent reserved is in reality a penalty entirely disproportioned to any damage that could possibly ensue for the tenant's acts. Nor is this case comparable to those where an acceleration of the date for payment of the principal of a mortgage is provided in case of failure to meet interest due. There the obligation to pay the entire principal is fixed and certain, and the whole amount is payable in any event. Here the 8th article of the lease provides that, in case of fire rendering the premises unfit for occupancy, rent shall be suspended while the repairs are being made; and, if the landlord decides to rebuild, the term shall cease and the accrued

rent be paid up to the time of the fire only. Moreover, the acceleration of payment in the case is not effected by default in the payment of rent only, but may be enforced for breach of many trivial and inconsequential conditions. I am of the opinion that the provision in question must be treated as a penalty, under the rule laid down in *Seidlitz* v. *Auerbach* (230 N. Y. 167) where Judge Andrews wrote: " As has been said, the lease contained many covenants of varying importance on the part of the lessees. As to some a loss occasioned by a breach [was] ascertainable with certainty and necessarily would be inconsiderable. It appeared on the trial that the premium for liability insurance was $17.01. As to other covenants the damages that might result were uncertain. Still the meaning of the agreement as to the deposit of the $7,500 is clear. It was deposited as security for the performance of each of these covenants. In the event of default in the case of any one of them the damages are said to be liquidated at the sum of $7,500. A default does not mean a breach of all of them. Nor can it mean the breach of that one of them which may seem the most important. The language is too specific to admit of any such construction as was given in *Brownold* v. *Rodbell* (130 App. Div. 371). Nor, as their answer shows, is such its proper construction as understood by the defendants. This being so, it is immaterial which covenant was in fact broken. In determining whether the amount of the deposit is to be treated as liquidated damages or as a penalty the agreement is to be interpreted as of its date, not as of its breach. (*Dunn* v. *Morgenthau,* 175 N. Y. 518; *Dunlop P. T. Co., Ltd.,* v. *New Garage & Motor Co., Ltd.,* L. R. 1915, App. Cas. 79.) It is also true that a stipulation to forfeit a certain sum for the breach of any of the terms of the contract cannot be separated and a part treated as a penalty and the remainder as liquidated damages. (*Stillwell* v. *Paepcke-Leicht Lumber Co.,* 73 Ark. 432.) With these principles in mind the great weight of authority is to the effect that where a contract contains a number of covenants of different degrees of importance and the loss resulting from the breach of some of them will be clearly disproportionate to the sum sought to be fixed as liquidated damages, especially where the loss in some cases is readily ascertainable, the sum so fixed will be treated as a penalty. The strength of a chain is that of its weakest link.

" There is little satisfactory discussion on this question in the higher courts of the State. Reference is made to the matter in *Jackson* v. *Baker* (2 Edw. Ch. 470); *Cotheal* v. *Talmage* (9 N. Y. 551); *Niver* v. *Rossman* (18 Barb. 50); *Lampman* v. *Cochran* (16

2

N. Y. 275); *Staples* v. *Parker* (41 Barb. 648); *Beale* v. *Hayes* (5 Sandf. 640), and *Bagley* v. *Peddie* (16 N. Y. 469, 475). In *Clement* v. *Cash* (21 N. Y. 253), where all the stipulations on each side were to be performed at one time, and where a breach of any one of them would be a breach of the entire contract, it is said that the rule does not apply. In other jurisdictions the rule as we have stated it is adopted. (*Dunlop P. T. Co., Ltd.,* v. *New Garage & Motor Co., Ltd.,* L. R. 1915, App. Cas. 79; *O'Brien* v. *Illinois Surety Co.,* 203 Fed. Rep. 436; *Fisk* v. *Gray,* 11 Allen, 132; *Trustees* v. *Walrath,* 27 Mich. 232; *Gibbs* v. *Cooper,* 86 N. J. L. 226; *Parker-Washington Co.* v. *City of Chicago,* 267 Ill. 136; *Keck* v. *Bieber,* 148 Penn. St. 645.) Even could it be said that in this State we are not already committed to the rule as so laid down, we approve of it now. The reasoning upon which it is based is unanswerable. Whether a sum is to be treated as liquidated damages or as a penalty depends upon the intent of the parties to a contract as disclosed by the situation and by the terms of the instrument. (*Caesar* v. *Rubinson,* 174 N. Y. 492.)"

It was held in *Keck* v. *Bieber* (148 Penn. St. 645) that the presumption is that a lump sum named by the parties to a contract is a penalty, rather than liquidated damages; the name by which it is called is of slight weight, the controlling elements being the intent of the parties and the special circumstances of the case; and where there are numerous covenants of the most varied kinds and importance, and yet the sum named is payable for the breach of any, even the least, it is a penalty.

Appellant now insists that it was entitled in any event to recover judgment for one month's rent. It is sufficient upon that point to cite what occurred in the trial court: " Mr. Steiner [plaintiff's counsel]: Will your Honor reserve your decision on the defendant's motion and allow us to go into the case and allow me to submit briefs? The Court: No. Of course, there is a question whether you have not made out a cause of action for $375. If you wish to press that question, I am open to anything you may say. Mr. Steiner: I do not simply wish to rest on that account, your Honor. The Court: You do not care to press the case as an action for $375? Mr. Steiner: No, your Honor."

The judgment appealed from should be affirmed, with costs.

Clarke, P. J., Smith, Page and Greenbaum, JJ., concur.

Judgment affirmed, with costs.