MICHAEL DE YOUNG *vs.* LETITIA BUCHANAN.—*December*, 1838.

An action of *assumpsit*, for use and occupation, can only be sustained, when founded upon a contract, express or implied.

It seems, at this day, to be well settled, that when a tenant for a term of years, or from year to year, holds over, without any new stipulations between the parties, he impliedly holds, subject to all the covenants in the lease, which are applicable to his new situation.

And in the absence of any new and express stipulations, and when the relation of landlord and tenant continues to exist, the law implies those terms, which are found in the contract, which has expired.

APPEAL from *Baltimore* county court.

THIS was an action of *assumpsit* brought by the appellee on the 2d April, 1835, in which she declared, for work and labour, &c., and for the use and occupation of a certain dwelling-house, store, messuage, &c., of the plaintiff, by the said *De Young*, at his special instance, &c.; and by the sufferance and permission of the plaintiff, for a long time then elapsed, had held, used and occupied, &c. The declaration also contained the common counts. The defendant pleaded *non assumpsit*, on which issue was joined.

At the trial of the cause, the plaintiff, to support the issue on her part, gave the following evidence, to wit: that on the 25th August, 1823, *Letitia Buchanan*, of *Philadelphia*, through her agent, *Edward J. Coale*, leased the premises in Market street, in the city of *Baltimore*, to *Michael De Young*, for a term certain, viz: for five years, commencing from the 20th day of August, 1823, at $500 per annum, payable quarterly, free of all deductions for repairs, &c. during the said term.

On the 15th of September, 1828, a new lease was executed by *L. Buchanan* for three years, to commence from the 20th of August, 1828, the date of the expiration of the first lease, at $600 per annum, payable quarterly. On the 6th June, 1831, a further lease for a term certain was executed, viz: for three years, to commence from the 20th of August, 1831, the date of the expiration of the previous lease.

On the 20th of August, 1834, the foregoing lease expired. In May, 1834, *George H. Newman*, the agent of *Mrs. Buchanan*, and at her request, called on *Mr. De Young*, and informed him, that on the expiration of said lease in the ensuing *August, Mrs. Buchanan* would not again renew the lease, unless the rent were greatly augmented; that said *De Young* had enjoyed the property for nearly eleven years at a remarkably low rent, and had not performed his agreement to keep it in repair, and that unless $1,200 or $1,400 per annum were the stipulated rent, *Mrs. Buchanan* would decline a renewal. On the 20th of July, 1834, Mr. Newman wrote the following letter to *Mr. De Young*, which was sent to and received by him, said *De Young*, on the 30th July.

*Michael De Young, Esq.*        *Baltimore, 20th July*, 1834.

SIR:—To prevent any misunderstanding hereafter, relative to the rent of the property of *Mrs. Buchanan* in Market street, which you now occupy, I think it proper to repeat to you in writing what I stated to you verbally in May last, in the presence of my clerks, viz: that *Mrs. Buchanan* would require of you to give her possession of the property on the

21st of August next, when your lease expires, or pay her a rent of one thousand dollars per annum, in quarterly payments, from and after the above date. As I am acting in this matter only as an agent, and have already given you sufficient time to make up your mind on the subject, I must request a prompt answer to this note. If I do not hear from you definitely on or before the 31st inst., I shall advertise the property for rent on the 1st of August, and consider myself at liberty to lease it to any other person without further reference to you.

Respectfully, your obedient servant,

GEO. H. NEWMAN, *Agent for Letitia Buchanan.*

On the 30th of July, *Mr. De Young* answered said letter in writing.

*Geo. H. Newman, Esq.*                *Baltimore, July* 30, 1834.

SIR:—Your letter dated 20th July, was handed me this morning by your clerk in the street, and, in reply, I beg to state, that the rent I pay at present, is fully equal to the value of the property, and as much as I, or any one else, can afford to pay at these times: as soon as they improve, I will be ready to treat with you about an increase of rent, but for the next year the rent will have to stand at its present price.

Yours, respectfully,

MEICHEL DE YOUNG.

That said *De Young* handed said letter of the 30th July, to said *Newman*—*Newman* then told him, that if he kept the property he should pay the $1000, or he would use measures to get him out if he could; to which *De Young* replied, alluding to this letter, there was his reply. On the 20th of August, when the lease expired, he paid the quarter's rent then due, refused to remove or to say any thing further on the subject of rent than what was contained in said letter.

November 20th, 1834, *Mr. Newman* presented a bill for a quarter's rent, viz: for $250, the one-fourth of $1,000, according to the terms of *Mr. Newman's* verbal assurance in May, and the letter of the 20th July : this bill *Mr. De Young*

refused to pay: he was again urged to leave the premises or
pay at the said rate, as more than $1,000 could be obtained
for the premises, but he insisted on remaining at the old rate
of $600, and tendered the quarter's rent at that rate, viz:
$150, which was received by *Mr. Newman* without preju-
dice to *Mrs. Buchanan,* and for which a receipt was given
by *Hoffman & Dobbin.*

1834.    " Mr. Michael De Young to Letitia Buchanan,   Dr.
Nov. 20.    To one-quarter's rent of house No. 198
                    Market street, due this day,   .   .   $250 00

> *Baltimore, January 22d,* 1835.

Received of *Mr. Michael D. Young* $150, on account of a
quarter's rent due *Mrs. L. Buchanan,* of Philadelphia, on
21st November, 1834; the said sum is to be considered in
full of said rent if it shall be decided by Baltimore county
court, or agreed between the counsel of said *De Young* and
*Buchanan,* that no more is due.

> HOFFMAN & DOBBIN, *Ats. for Mrs. Buchanan.*"

For the balance of $100 suit is brought.

On the 20th February, 1835, another quarter's rent came
due, and a bill for $250 was presented and refused; some
time after a distress being threatened, it was again proposed
to pay $150, and to leave the question of responsibility for
the remaining $100, to abide the decision of the said cause.

> "*Baltimore, 20th February,* 1834.

Received $150 rent, without prejudice to *Mrs. Buchanan's*
further claim of $100, as before stated.

> HOFFMAN & DOBBIN."

20th February, 1835.—$250 due, $150 paid, same re-
ceipt, by Hoffman & Dobbin.

On the 20th May, 1835, another quarter's rent becoming
due, a bill for $250 was again presented and arranged in
the same way.

> "*Baltimore, 21st May,* 1835.

Received of *Mr. Michael De Young* $150, on account of
rent due *Mrs. Buchanan,* of Philadelphia, 21st May, 1835.

This receipt being expressly understood to be as the preceding receipts, no bar to the claim of *Mrs. Buchanan* to the additional $100 claimed by her.

DAVID HOFFMAN, *Agt. for Mrs. Buchanan.*"

On the 27th of April, 1835, *George H. Newman* being applied to by *Peter Albinson* to lease the premises for seven years, to commence from the 20th August, 1835, when the one year for which *Mr. De Young* refused to give up the premises should expire, he agreed to lease the same for seven years at $1200, from said 20th of August, or sooner, if *Mr. De Young* would agree to vacate sooner, and without any prejudice to *Mrs. Buchanan's* claim for rent at $1000, instead of $600 per annum, which was agreed to by said *Newman* and *Albinson.*

"*Baltimore, 27th April,* 1835.

"I will lease you the property, No. 198 Market street, now occupied by *Michael De Yong,* for seven years from the 20th August next, (or from the 20th May, if you can obtain possession from *Mr. De Young,* the present occupant,) at the annual rent of $1200 per annum, payable quarterly, free and clear of all taxes, assessments, water rent, and with the usual covenants : and I will also allow you $400 to be expended in improvements and repairs, the same to be in full of all further claims for these objects during your lease.

GEO. H. NEWMAN, *for Letitia Buchanan.*
*Mr. Peter Albinson.*"

On the 20th May, 1835, *De Young* and *Albinson* came to an arrangement, by which *De Young* agreed to vacate in favour of *Albinson,* and without any prejudice to *Mrs. Buchanan's* claim to the three quarters' rent ending in May, at the rate of $1000, instead of at the rate of $600, if *Mrs. Buchanan* was, on the said facts, entitled to the said increased rent.

Whereupon the defendant prayed the court to direct the jury, that the plaintiff could not recover in this suit.

1st. Because an action for use and occupation will not lie in such case.

2d. Because from the facts of this case, as given in evidence, no inference of renting at any other than the rate of $600 per annum, can be drawn by the jury.

3d. That the proper remedy of the plaintiff was by debt, ejectment, or the summary remedy provided by the act of assembly : which directions the court (*Magruder* and *Purviance, A. J.*) refused to give.

The defendant excepted.

A verdict for $334 21, with interest from the 24th January, 1837, being found against the defendant, he appealed to this court, and the cause came on to be argued before BUCHANAN, Ch. J., STEPHEN, ARCHER and SPENCE, Judges.

GLENN, for the appellant, maintained :

1. That the action for an increased rent could not be maintained, because the notice to quit was defective.

2. That there could be no inference of a renting at a price beyond $600 per annum.  There was no evidence of such a renting, nor circumstances from which it could be deduced.

3. That the proper remedy of the appellee, was debt, ejectment, or the summary method prescribed by the act of 1793, ch. 43.

On the 1st point he cited *Soulsby vs. Neving*, 9 *East.* 310.

On the 2d point he cited *Ryan vs. Admr. of Marsh*, 2 *Nott and McCord*, 156.   *Smith vs. Stewart*, 6 *John.* 46.   *Stockett vs. Watkins*, 2 *Gill and John.* 339.   *Featherstonhaugh vs. Bradshaw*, 1 *Wendell*, 134.   *Wright vs. Darby and Bristow*, 1 *Term*, 162.   *Doe Ex. Dem. Riggle vs. Bell*, 5 *Term*, 472.   *Abeel vs. Radcliff*, 15 *John.* 506, 507, 509.   *Bradley vs. Covel*, 4 *Cowen*, 349.   *Digby vs. Atkinson, et al*, 4 *Camp.* 275.   *Abeel vs. Radcliff*, 13 *John.* 299.   *Woodfall*, 660.   *Birch vs. Wright*, 1 *Term Rep.* 378.

On the 3d point he cited 1 *Chitty's Plea.* 376, *ed. of* 1838.

GEORGE W. DOBBIN, for the appellee :

The action for use and occupation is intended to apply to all cases not inconsistent with the relation of landlord and

tenant, where the contract is not under seal. The law will infer that relation from all the circumstances of the case. The action is founded on the idea of a benefit conferred by the landlord, and compensation due from the tenant. *Com. L. and T.* 6 *Law Lib.* 437. The terms of the statute which gives the action for use and occupation are liberally considered. When one party occupies by the sufferance of the other, an implied *assumpsit* is raised. In every case of permissive occupation not accompanied by circumstances denying the relation of landlord and tenant, that relation exists. Three things are necessary to maintain this action.

1. Occupation by the defendant.
2. Permission of the plaintiff.
3. Value of the premises occupied.

In the case at bar, the plaintiff shows occupation, and at every step contract appears. The defendant was insisting on his relation as tenant in every stage of the transaction. This relation is not always referred to a previous holding; for the purposes of the statute if the relation appears, it is enough. The value of the premises is open to the jury. Here the defendant commenced under a sealed lease, and ever after he recognizes his duty as tenant, and promises to pay rent. He pays rent. It is received under protest. No fact has occurred to disturb the right to resort to this form of action.

A tenant holding over is not necessarily a trespasser. He is tenant at sufferance. He came in lawfully. He holds over. His relation thus becomes equivocal. He gives the landlord an election. The election of considering him a tenant does not conclude him from suing in ejectment. Up to the time of the demise laid in ejectment, the landlord may recover for use and occupation. After holding over, use and occupation may be maintained.

A tenant may be warned off, and in case he does not depart, a contract may be implied and resorted to. *Birch vs. Wright,* 1 *Term,* 387. *Burchell vs. Hornsby,* 1 *Camp.* 360. *Cheny vs. Batten, Cowper,* 246. If the relation is not impossible, the court will infer it.

When the relation is maintained in fact, then the question arises, to what sum is the appellee entitled?

The action is not brought for rent, as rent, but for reasonable satisfaction. A prior contract may be used as evidence upon the quantum of damages. Did then any agreement exist by which the jury should be regulated. The agreement may become the measure of damages. Our notice may perform that office, or the jury may determine it upon evidence. The argument on the other side erroneously supposes that the old lease must be followed in all its terms. This proposition is controverted.

A tenant holder is not necessarily a trespasser. *Gwynn vs. Jones' Lessee,* 2 *G. and J.* 173, 184. He may become a tenant at will. *Dyer,* 62.

I insist that holding over creates a tenancy similar to that which would result from the acts of the parties, as a payment of rent, or a permission from the landlord.

When after the old contract expires, it is only continued by some new act, or some omission showing its existence. It requires concert of both parties to renew by implication the expired contract. *Right vs. Darby and Bristow,* 1 *Term Rep.* 163. *Messenger vs. Armstrong,* 1 *Term Rep.* 55. *Abeel vs. Radcliff,* 15 *John.* 507. *Bradley vs. Covel,* 4 *Cow.* 350. *Cheny vs. Batten, Cowper,* 245. The tenancy was repudiated on the old terms, and it does not flow from the mere fact of holding over. The holding over merely creates a tenancy by sufferance. *Jackson vs. Parkhurst et al,* 5 *John.* 128. This may be put an end by landlord, and hence he may prescribe terms to the tenant, if he remains he adopts them. We simply claim the real value. This the jury gave us.

SPENCE, Judge, delivered the opinion of the court.

The action of *assumpsit,* for use and occupation, can be sustained where it is based upon a contract either express or implied; and unless it be thus founded, it cannot be maintained. *Birch vs. Wright,* 1 *Term Rep.* 387.

In the case now under consideration, the term created by the written agreement, was ended and determined on the 20th day of August, 1834, and *De Young*, the tenant, remained in the possession and enjoyment of the premises, from the expiration of the lease until some time in the month of May, 1835.

It seems at this day to be well settled law, that when a tenant for a term of years, or from year to year, holds over after the expiration of the term, without any new stipulations between the parties, he impliedly holds subject to all the covenants in the lease, which are applicable to his new situation. *Digby vs. Atkinson and Another*, 4 *Camp. Rep.* 275. *Doe on demise of Riggs vs. Bell*, 5 *Term Rep.* 471. 13 *John. Rep.* 297.

If this be a correct view of the law, it follows as a necessary and unavoidable conclusion, that in the absence of any new and express stipulations in such cases, and where the relation of landlord and tenant does exist, the law will imply those terms, which are found in the contract which has expired.

We are thus brought to the inquiry whether the record in this cause furnishes any evidence of any new conditions or supplemental contract, which will ascertain and define the terms of the relation between these parties; for upon this proposition alone it must depend whether the county court erred or not, in rejecting the defendant's prayer.

The material evidence in this cause, touching the terms and character of the relation between these parties, subsequent to the 20th of August, 1834, is to be found in the written correspondence of *George H. Newman*, the plaintiff's agent, bearing date the 20th July, 1834, and the defendant's answer thereto of the 30th of the same month and year. *Newman*, the agent of the plaintiff, in his note of the 20th July, 1834, uses this unequivocal language to *De Young*, the defendant: " *Mrs. Buchanan* [will] require you to give her possession of the property on the 21st of August next, when your lease expires, or pay her a rent of one thousand dollars

De Young *vs.* Buchanan.—1838.

per annum, in quarterly payments, from and after the above date." He requests a prompt answer to this note, and concludes as follows : " If I do not hear from you definitely, on or before the 31st inst. I shall advertise the property for rent on the 1st of *August*, and consider myself at liberty to lease it to any other person, without further reference to you." In reply to this note, *De Young* says: " I beg to state that the rent I pay at present, is fully equal to the value of the property, and as much as I, or any one else, can afford to pay at these times; as soon as they improve, I will be ready to treat with you about an increase of rent, but for the next year the rent will have to stand at its present price."

Is there one expression to be found in this correspondence, from which the human mind can deduce the most remote semblance of a contract, or agreement; it is nothing more or less than a demand on the one side that the rent shall be increased from $600 per annum, the former rent, to $1000, with a threat that the tenant will otherwise be turned out; with as prompt a declaration on the other side, that six hundred dollars is the value of the property, and as much as he could or would pay. We think the conclusion that there was not any new agreement, or contract, proved by this correspondence, is so clear, that no argument on our part can make it more plain.

It is admitted, and indeed the proof on the record shewing, that at the time the suit was brought no part of the six hundred dollars, the former rent, was in arrear ; that the rent for the quarter ending the 20th of February, 1835, was then paid, and as this was all the plaintiff would have been entitled to recover in this action, and under this proof, we are of the opinion the court below erred in not granting the defendant's prayer, and therefore reverse the judgment, with costs.

JUDGMENT REVERSED.