A. H. FETTING MANUFACTURING ·JEWELRY ·
COMPANY *v.* ·ADA R. WALTZ et al.
[No. 23, October Term, 1930.]

*Decided December 15th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James W. Chapman, Jr.,* for the appellant.

*Harry N. Baetjer* and *J. Crossan Cooper, Jr.,* for the appellees.

PARKE, J., delivered the opinion of the Court.

The plaintiffs, Ada R. Waltz, Zora A. Klare and Bertha F. Kuhnert, are the owners of an improved lot on Liberty Street, in Baltimore City, which they demised to the A. H. Fetting Manufacturing Jewelry Company, the defendant, by

a lease under seal, dated October 10th, 1922, for a term of five years that would end on November 4th, 1927. The rent reserved for the first three years of the lease increased to $7,000 during the succeeding two years, and was payable in equal instalments at the beginning of every month. There are numerous covenants in the lease, whose statement is unnecessary, because the covenants of the lessee to vacate the premises at the end of the term, and to become liable to the lessors for all loss or damage which the lessors might suffer through a loss of sale or of lease or otherwise by reason of its failure to leave as agreed, are the only covenants whose effect is in controversy.

There is no material conflict in the testimony. It tended to establish that, some months before the expiration of the term, the lessee discussed with its lessors the execution of a new demise for a further period of five and ten years, but that the parties could not agree, and that the tenant wrote on August 23rd, 1927, that it was preparing to move but that, if its plans miscarried so that it would be unable to open its new place of business before the expiration of the lease, the tenant would consider it a great favor if the lessors would extend the lease for a month or two, as might be necessary; and that it would meet the lessors for the purpose of making arrangements which would be fair to all parties. The lessors replied four days later by letters directing the tenant to confer with their agent, who was engaged in the real estate business in Baltimore, and who had the matter involved in his charge; and concluding with the statement that they felt sure a satisfactory arrangement could be made. This agent and the tenant met the first week of October, and their negotiations were fruitless, because the agent, who had full authority from his principals, would not agree to prolong the period of the lease for less than six months. After this futile meeting, nothing more was done during the term, and the original demise continued to fix the duration of the renting and the rights and liabilities of the parties.

Upon the expiration of the term the lessee did not surrender the premises as it had covenanted, but remained in

actual possession until November 26th, 1927, and on December 1st, 1927, forwarded by mail to the lessors checks which aggregated $583.33, which was a sum equivalent to the monthly instalment of the yearly rent reserved under the original lease. The lessors declined to receive the checks except as a payment of the monthly instalment of rent which had accrued due by the lessee as a tenant holding over for an additional year; and the lessee insisted that a payment of rent to December 4th, 1927, was a full discharge of its liability. In the assertion of those conflicting positions, the checks and keys were repeatedly sent and returned between the disputants. Ultimately the checks for $583.33 were accepted by the lessors upon an understanding that the acceptance was without prejudice to the rights of either side, and the keys were retained by the lessors under circumstances having a similar effect. *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 175, 176; *Biggs v. Stueler,* 93 Md. 100, 111, 112; *Tiffany on Real Property,* vol. 3, pp. 1585, 1586. Notwithstanding the effort of the owners to secure a tenant for the benefit of the lessee, the property remained unoccupied from the time the lessee left until after the owners began an action, on January 2nd, 1929, against their former lessee for the recovery of the rents issuing from the premises for the period of one year. The judgment recovered by the plaintiffs was for $6,416.67, which sum was the yearly rental under the first demise, less the payment of $583.33, which had been accepted by the plaintiffs without prejudice to the rights of any party.

The defendant's contention on this appeal is presented by the refusal of the court at *nisi prius* to grant its prayer which denied a right of recovery. This demurrer prayer was not addressed to the pleading, and the theory upon which it was submitted is that the defendant was not a tenant holding over under a new renting, and that the failure of the tenant to surrender the premises at the expiration of the original period of the renting did not cause the plaintiffs any loss within the contemplation of the inclusive covenants of the lease.

The defendant was a tenant for years, and did not surrender the premises to the landlords at the expiration of the period of its tenancy, but remained for almost a month, when the tenant abandoned the premises, and then offered in full the amount of the monthly instalment of the rent which had been reserved under the original lease. Under these circumstances the defendant became a trespasser in the sense of being wrongfully in possession, or a tenant from year to year at the election of the landlords. The defendant, however, had no such election. In the language of an eminent authority: "His mere continuance in possession fixes him as tenant for another year if the landlord thinks proper to insist upon it. And the right of the landlord to continue the tenancy will not be affected by the fact, that the tenant refused to renew the lease and gave notice that he had hired other premises." *Taylor on Landlord and Tenant* (9th Ed.), sec. 22. In a later work of equal authority the prevailing rule is similarly stated in this language: "By the decided weight of authority in this country, one holding over may be held liable as a tenant for a further period, without reference to his actual wishes on the subject. As is frequently expressed, the landlord has the option to treat him as a tenant for a further term or a trespasser." *Tiffany's Landlord and Tenant,* secs. 209, 211, 212.

This rule does not seem to have been expressly adopted in this jurisdiction. It was mentioned in the late case of *Rice v. Biltmore Apartment Co.,* 141 Md. 507, 517, 518; but earlier instances in the reports of asserted liability on the part of a tenant holding over are referable to a new contract resulting from the express or implied consent of the parties. *Cramer v. Baugher,* 130 Md. 212, 215; *Dietrich v. O'Brien,* 122 Md. 482, 484, 485; *Feldmeyer v. Werntz,* 119 Md. 285, 296; *Biggs v. Stueler,* 93 Md. 100, 109; *Hobbs v. Batory,* 86 Md. 68, 70; *Hall v. Myers,* 43 Md. 446, 450; *Vrooman v. McKaig,* 4 Md. 450, 454; *DeYoung v. Buchanan,* 10 G. & J. 149, 157.

The rule is sometimes stated to be based on the theory that the tenant holding over presumably intends to prolong the

duration of his tenancy by another term, and that he cannot overcome this presumption by setting up, to the disadvantage of the landlord, that he is holding as a wrongdoer. See *Tiffany on Landlord and Tenant,* vol. 2, p. 1472. Mr. Williston finds the rule to be an illustration of the "general principle that when an act may rightfully be done with certain consequences or effect, the actor cannot assert for his own advantage to avoid that effect, that the act was done wrongfully." *Williston on Contracts,* vol. 3, sec. 1856, pp. 3179, 3180.

It is difficult to ascribe the liability to contract, when this liability exists notwithstanding any statement, however explicit, of a contrary intention by the tenant. Mr. Tiffany prefers, and it seems the better view, to regard the liability of the tenant wrongfully holding over as one imposed by law on the tenant, without his express or implied consent, and enforceable in an action at law as a quasi-contractual obligation in order that justice may be done between the parties. *Tiffany on Landlord and Tenant,* vol. 2, p. 1472; *Williston on Contracts,* vol. 1, sec. 3; sec. 21, n. 20, p. 24. *Corbin's Anson on Contracts,* p. 571 and notes. *Tiffany on Real Property* (2nd Ed.), vol. 1, pp. 247 *et seq.*

The rule imposes a penalty upon the individual tenant wrongfully holding over, but ultimately operates for the benefit of tenants as a class by its tendency to secure the agreed surrender of terms to incoming tenants who have severally yielded possession of other premises in anticipation of promptly entering into the possession of the new. This makes for confidence in leasehold transactions. Again, the terms of the leases of property which is rented for business, commercial, residential, and agricultural uses tend to begin and end at a customary date or during a particular season of the year, as determined by the nature of the use of the specific property, and as the value of any piece of property is largely dependent upon its actual or potential continuing yield in periodic rent, the social and economic importance of the landlord being able certainly to deliver, and the prospective tenant so to obtain possession on the stipulated day, is obvious.

These considerations afford a sound and rational basis for the adoption of a rule which is supported by the great weight of authority in this country and, now, probably, in England. *Supra; Dougal v. McCarthy* (1893), L. R. 1 Q. B. 736.

If the tenant had intended to hold over and the landlords had accepted the payment of the installment of rent, a tenancy from year to year would have arisen by agreement of the parties. *Hall v. Myers,* 43 Md. 446. Because of their close analogy the quasi-contractual obligation imposed by law should be similar to the one imposed by the tenant holding over by consent, so, the tenancy in the instant case was a tenancy from year to year. *Supra.*

The testimony is clear that, when the defendant failed to surrender the premises at the end of the original period of letting, without any basis in law or fact for such action, the landlords forthwith exercised their option and elected to treat the defendant as their tenant from year to year. This new tenancy was subject to the provisions of the original lease with reference to the rent and to the other obligations so far as they are applicable, as though the new tenancy had been created by the consent of the parties. The defendant was, therefore, bound to pay $7,000 as the stipulated rent for the year next ensuing the end of period of the first lease.

2. The defendant further contends that, even if there were a new tenancy from year to year, the following clause of the original lease limits the loss and damage recoverable by the plaintiffs, and that there was no legally sufficient proof that the plaintiffs had sustained any injury within the contemplation of this clause:

"The tenant agrees that it will vacate the premises on the expiration date as originally fixed herein, or upon the earlier termination of said term, in the event of a sale or contract of sale as above provided or upon any other termination of said lease in accordance with the terms hereof. In the event of a failure of the tenant to so vacate, then the tenant shall be liable to the landlords for all loss or damage which the landlords may suffer through a loss of sale or loss of lease or otherwise by reason of said failure to vacate and said liability

and the rights of the landlords shall be in addition to all the rights which said landlords might be entitled under any present or future law for speedy ejectment or recovery of possession of said premises."

The election by the landlords to continue the defendant as their tenant for another year created a tenancy from year to year, that began with the termination of the original period of renting and made the defendant's possession rightful from this beginning of his new tenancy. So, by this election, the landlords waived all claim against the defendant with respect to its failure to surrender possession at the close of the first period, and the terms of the tenancy from year to year will determine the rights and liabilities of the parties. 2 *Tiffany on Landlord and Tenant,* sec. 212, p. 1496. If the quoted provisions be assumed to be consistent with the tenancy from year to year, and, therefore, become provisions of this tenancy, they do not affect the right of the landlord to recover the unpaid instalments of the yearly rent of the new tenancy. These quoted provisions do not relate to rent, but to damages which the landlord may sustain by a failure of the tenant to surrender possession as agreed. This is made clear by the subsequent and express provision of the original lease that, if the rent be and remain in arrear for a prescribed time, the landlords may re-enter, and determine the lease, and demise the premises; and, at the option of the landlords, the tenant shall remain liable during the unexpired portion of the term for the deficit between any rent received by the landlords and the rent stipulated to be paid. Furthermore, the covenants in the lease to pay rent and to be liable for damages for a failure to surrender the premises as agreed create obligations with reference to two different undertakings.

In the instant case, the tenant did not refuse to vacate the premises during the new tenancy. On the contrary, after paying one monthly instalment of the yearly rent, the tenant repudiated the tenancy, abandoned the premises, and refused to pay the rent. The testimony shows that the landlords did not resume possession to the exclusion of the tenant, but notified the tenant that it would be held for the rent unpaid.

The fact that the plaintiffs made diligent effort to procure a tenant for the unexpired term did not relieve the defendant of its liability for rent but, by the implied terms of the tenancy, would have inured to the benefit of the defendant, if a tenant had been procured at any time before the expiration of the year of the defendant's tenancy. *Oldewurtel v. Wiesenfeld,* 97 Md. 165, 176; *Tiffany on Real Property* (2nd Ed.), sec. 43, p. 1586.

For the reasons stated there was no error in the court's refusal to grant the defendant's instruction for a directed verdict in its favor, and the judgment will be affirmed.

*Judgment affirmed, with costs to the appellees.*