PHILIP GOSTIN *v.* SIMON NEEDLE, ET AL.

[No. 57, October Term, 1945.]

*Decided February 6, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Leo M. Alpert,* with whom were *Makover* and *Kartman,* on the brief, for the appellant.

*Bernard S. Melnicove* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by the plaintiff (appellant) from a judgment for the defendants (appellees) for costs, after an order sustaining a demurrer to the declaration. The transcript does not show the judgment, but in lieu of other correction of the record counsel have stipulated that such final judgment was rendered.

On February 15, 1941, the defendants, by a lease under seal, rented to the plaintiff "the store portion of the first floor," of No. 1433 Pennsylvania Avenue, Baltimore, for the term of three years, beginning on February 15, 1941, and ending on February 14, 1944, the rental to be $360 for the first year and $420 for each of the second and third years, payable monthly in advance. The lease contains usual provisions, but none for renewal or extension or holding over. It also provides: "Should The Landlords at any time during the term of this lease sell or agree to sell the property known as Number 1433 Pennsylvania Avenue, Baltimore, Maryland, and thereby desire possession thereof, the said Tenant hereby agrees to vacate, quit and surrender the said premises within sixty (60) days from the date of such notice to him of the Landlords' or purchaser's desire to regain possession, and upon such surrender in accordance with the terms of this lease, the said Tenant shall receive the sum of one thousand dollars ($1,000.00) as liquidated damages."

The declaration alleges that: on February 14, 1944, the plaintiff held over and remained in possession with the defendants' consent, "subject to the said rent," and was so in possession when on September 16, 1944, "the plaintiff was notified that the said property had been sold and that the purchaser desired possession thereof within sixty days thereafter"; "the plaintiff thereupon surrendered the said premises to the said purchaser within sixty days in accordance with the terms of said lease and requested of the defendants, his landlords, pay-

ment of the sum of $1,000 as stipulated in said lease, but the defendants failed and refused to pay said sum."

When the plaintiff held over with the consent of the defendants after the expiration of the term, a tenancy from year to year arose by agreement of the parties. *Hall v. Myers,* 43 Md. 446; *Fetting Co. v. Waltz,* 160 Md. 50, 55, 152 A. 434. This was a new tenancy, which began at the end of the tenancy for years. The second tenancy differed from the first in that it was not for a definite period of years but for a yearly period renewable indefinitely until terminated by a notice. *Smith v. Pritchett,* 168 Md. 347, 350-351, 178 A. 113. In other respects the tenant holding over "impliedly holds subject to all the covenants in the lease, which are applicable to his new situation." *DeYoung v. Buchanan,* 10 Gill & J. 149, 157, 32 Am. Dec. 156; *Smith v. Pritchett, supra,* 351, 352, 178 A. 113, * * * the law presumes the holding to be on the terms of the original demise and subject to the same rent and to all the covenants of the original lease." If the rent or some other provision of the original lease is changed by agreement, this "would not alter the rule, except as to that particular." *Cramer v. Baugher,* 130 Md. 212-215, 216, 100 A. 507, 509. Ordinarily, as in the case at bar, these terms of the tenancy are based on an implied contract. But the same rule is applicable when the parties actually disagree as to some of these terms, *Cramer v. Baugher,* or even (at the option of the landloord) when the tenant states in advance his intention not to hold over on these terms. In such cases the liability can hardly be ascribed to contract but seems to be a quasi contractual obligation. *Fetting Co. v. Waltz, supra,* 53, 54, 152 A. 434; *Tiffany Real Property,* 3d Ed., Sec. 175.

The defendants contend that the provision in the event of a sale "during the term of this lease" is not "so usual and ordinary that it can be considered applicable to the new tenancy." This contention mistakes the nature of the contract implied by law. Whether a particular clause in the original lease is "applicable to the

new situation" depends not upon the mere wording of the clause or whether the clause is "usual and ordinary," but upon the nature of the clause, *i.e.*, whether it is consistent with "the new situation." In other words, is "the new situation" sufficiently similar to the original situation to warrant the inference that the clause is one of the implied terms of the new tenancy? We have no doubt that the clause now in question was as applicable to the situation in 1944 as it was in 1941. This clause gave the landlords an option to terminate the tenancy in the event of a sale; the payment to the tenant is the price of the exercise of the option. Covenants or conditions for premature termination of tenancy, or options to terminate, in the event of a sale or other contingencies, are not uncommon. See cases collected in notes, 27 *A. L. R.* 845, 35 *A. L. R.* 518, 116 *A. L. R.* 931. Such provisions are no less applicable to a tenancy from year to year than to a tenancy for years. There may have been more reason for this clause in 1944 than ever before.

In *Belding v. Texas Produce Co.*, 61 Ark. 377, 33 S. W. 421, a provision in a lease for termination of the tenancy by the landlord by selling the premises, and payment by the landlord for improvements by the tenant, was held applicable to a tenancy from year to year created by holding over after expiration of the tenancy for years. In *Gardner v. County Commissioners*, 21 Minn. 33, 38-39, a lease for three years, with a right of renewal for three more, contained a provision that if the tenant should erect county buildings "before the expiration of the term or terms mentioned in this lease," in that case the tenant should have the right to terminate the lease. After the expiration of the two terms of three years each, a tenancy from year to year was created by holding over. The Court, citing *DeYoung v. Buchanan, supra,* and other cases, said: "This provision, *mutatis mutandis,* was applicable to the new tenancy," and the tenant had a right to terminate that tenancy.

See also *Tiffany, Real Property,* 3d Ed., Secs. 183, 184; *Thompson, Real Property,* Secs. 1034, 1035.

The defendants rely on *Hines Lumber Co. v. American Car and Foundry Co.,* 7 Cir., 262 F. 757, *certiorari* denied, 251, U. S. 557, 64 L. Ed. 413, and *Arsenault v. Angle,* D. C. Mun. App., 43 A. 2d 709. In the former case a dock lease contained no provision for renewal or extension and no provision (applicable to the original term) for cost of rebuilding, but contained a provision that *if* the lease were renewed or extended the tenant should pay the cost of rebuilding the docks. The tenant held over. The Court said [262 F. 758] : "Such holding over constituted a tenancy from year to year," which "was neither a renewal nor extension of the old lease." Consequently the provision for payment of the cost of rebuilding, in the event of renewal or extension, was not applicable to the tenancy from year to year. In the District of Columbia a tenant who holds over becomes, by statute, not a tenant from year to year but a tenant by sufferance. Tenancy by sufferance may be terminated at any time by thirty days' notice. In *Arsenault v. Angle,* a lease gave the lessor or its assignee the right to terminate it, in the event of a sale during the term, by giving a ninety-day notice. It was held that after expiration of the term this provision did not prevent a purchaser from terminating the tenancy by sufferance by a thirty-day notice.

The declaration does not state when, or whether, the defendants "sold or contracted to sell the property" and "thereby desired possession thereof," or whether "the plaintiff was notified" the defendants or at their instance. At the argument it was admitted that the notice was not given by the defendants, but by the purchaser. It may be that the notice was given, without authorization by the defendants, months after the sale and transfer of the property.

The clause in the lease gives the defendants, not the purchaser, an option to terminate the tenancy, *viz.,* if the defendants (1) (*a*) sell or (*b*) agree to sell the prop-

erty and (2) "thereby desire possession." The plaintiff must be given notice of (*i*) the defendants' or (*ii*) the purchaser's "desire to regain possession," according as the sale is to be consummated (*i*) after or (*ii*) before expiration of the notice. This option is given to the defendants for the benefit of the purchaser. Whether or not the option shall be exercised by the defendants will depend upon the value of the option to the purchaser, and ordinarily will be one of the terms of the sale. The value of the option will ordinarily be reflected in the price of the property. If the defendants sell the property without exercising the option or agreeing to exercise it, or authorizing the purchaser to exercise it for them, the purchaser cannot exercise it and thereby impose upon the defendants liability for the price of the option, *viz.*, $1,000. This, we think, is the meaning of the option clause. Different termination clauses have been differently construed. Authorities are not lacking which hold that an option of the landlord must be exercised by the landlord, not by the purchaser.

This construction is not changed if we assume that the option clause is a covenant running with the land, *i.e.*, with the reversion. Matter of *Loew's Buffalo Theatres, Inc.*, 233 N. Y. 495, 499, 502, 135 N. E. 862; 507 *Madison Avenue Realty Co., Inc., v. Martin*, 200 App. Div. 146, 192 N. Y. S. 762, affirmed, 233 N. Y. 683, 135 N. E. 969; *cf. Hollander v. Central Metal Co.*, 109 Md. 131, 71 A. 442, 23 L. R. A., N. S., 1135. On this assumption the landlord's option could be exercised by the first purchaser in the event of a second sale of the reversion, but not in respect of the first sale by the original landlord to him. *Krim Realty Corp. v. Varveri*, 97 Misc. 407, 411, 161 N. Y. S. 229; *Butler & Herman v. Meth*, 122 N. Y. S. 271, 273; *Payne v. Brathwaite*, 113 Misc. 517, 185 N. Y. S. 107; *Gabes v. Norton*, 228 Ill. App. 96, 99-102; *McClung v. McPherson*, 47 Or. 73, 81-83, 81 P. 567, 82 P. 13.

We hold that the defendants are liable for $1,000, the price of the option, if the option was exercised and the notice given by them or by their authority; otherwise they are not liable. It is not necessary to consider how promptly or in what form the option must be exercised or the notice given. The plaintiff, by accepting the notice and acting on it, waived any defects in the time or manner of exercising the option. The defendants cannot, by setting up defects in their own exercise of the option, escape payment of the price. If, however, the defendants hav not actually exercised the option, or authorized the purchaser to exercise it for them, then the purchaser could not, by professing to exercise it, make the defendants liable for the price.

Whether the purchaser, by demanding and accepting from the plaintiff surrender of the premises in accordance with the option clause, (a) is estopped to deny a right on his own part to exercise the option and his liability for the option price or (b) impliedly promised to pay the plaintiff the option price, are questions which are not before us.

As the failure to allege facts showing that the option was exercised, and notice given, by the defendants or by their authority, may perhaps be cured by amendment, a new trial will be awarded for this purpose. Rule 4 [formerly Rule 8, Code of 1939, Art. 5, Sec. 24(1)]; *Milske v. Steiner Mantel Co.,* 103 Md. 235, 251-252, 63 A. 471; *Tong v. Feldman,* 152 Md. 398, 407, 136 A. 822; *Picking v. Local Loan Co.,* 185 Md. 235, 44 A. 2d 462, 468.

*Judgment affirmed, with costs, and cause remanded for a new trial.*