Clinton R. BROWN, Appellant,

v.

MUSIC INCORPORATED, an Alaskan
corporation, Appellee.

No. 26.

Supreme Court of Alaska.

Feb. 6, 1961.

George B. McNabb, Jr., Fairbanks, for
appellant.

Henry J. Camarot, E. A. Merdes, Mc-
Nealy, Merdes & Camarot, Fairbanks, for
appellee.

Before NESBETT, C. J., and DIMOND
and AREND, JJ.

DIMOND, Justice.

The principal question here is
whether, after termination of a lease by

reason of the tenant's breach, the landlord may recover rental for the time that the tenant's personal property remains on the leased premises.

On May 1, 1955 a building near Fairbanks known as The Idle Hour was leased by Nehrbas to Thompson for a term of five years at a monthly rental of $650. Thompson assigned his interest in the lease to the corporation, Music Incorporated, of which he was president. On November 29, 1955, Music sublet a portion of The Idle Hour to Brown for use as a restaurant. This sublease was on a month-to-month basis with rental at the rate of $650 a month retroactive to October 1, 1955.

Brown placed on the premises certain restaurant equipment which he had agreed to purchase from Music for $10,000 under the terms of a written conditional sales contract dated November 29, 1955. Early in January 1956 he discontinued the operation of his restaurant business and ceased paying rent.

On March 29, 1956 Music wrote to Brown notifying him, because of non-payment of rent, to quit and vacate the premises and to remove all of his personal things. In addition, a demand was made for rent past due in the amount of $1,650. In response to this notice Brown went to The Idle Hour and removed some things which he described as "A-1 Sauce and a few little odds and ends that were left there." He did not remove the restaurant fixtures and equipment which he was purchasing from Music under the conditional sales agreement.

Music wrote to Brown again on April 17, 1956. He was notified that rent in the amount of $650 a month was due from January 1 of that year, and that within five days Brown would have to move "certain personal property" or else rent for storage space would be charged in the amount of $325 a month. The letter went on to say that in order to mitigate damages Music as-

sumed that Brown had abandoned his lease, and that it was Music's intent to rent one-half of the building at the rate of $325 a month and to charge Brown the same amount each month to maintain his personal property in the other half of the building. Music rented one-half of the building to a third party at the rate of $325 a month from April 20 to November 30, 1956. Brown took no action to remove the restaurant equipment. Finally, on September 4, 1957 Music notified Brown that it was removing the property to the Sig Wold Storage & Transfer where Brown could claim the property by paying the hauling and storage charges.

In May 1959 Music commenced this action against Brown to recover rent in the total sum of $10,406.67 for the period January 1, 1956 to September 4, 1957. After a trial without a jury the court found that Brown owed rent to Music at the rate of $550[1] a month from January 1 to April 20, 1956. In addition, the court held that the lease was terminated on April 20, that Brown continued to occupy a portion of the leased premises from that date to September 4, 1957 by reason of his failure to remove from the premises the property being purchased under the conditional sales contract, and that Music was entitled to recover a reasonable rental for that period at the rate of $325 a month.

The lease agreement was in effect from January 1 to April 20, 1956, when it was terminated by Music's notice to Brown. Thus, the court below was correct in holding that Brown owed Music rent at the rate of $550 a month for that period of time.

But the effect of Music's action in terminating the lease was to end the relationship of landlord and tenant. There was no agreement making the tenant's liability for rent survive a forfeiture of the lease. Therefore, after April 20 Brown was no

1. The rent specified in the lease was $650 a month. However, the trial court found that the parties had agreed to reduce the monthly rental to $550 for the period December 1, 1955 to June 30, 1956.

longer liable for rent; at the most he would be liable for damages if he had thereafter unlawfully withheld possession of the premises from his former landlord.[2]

Music argues, however, that when a lease is terminated it is optional with the landlord to treat the person continuing in possession as a trespasser or as a tenant. It contends that by notifying Brown on April 17 that if his personal property were not moved within five days he would be assessed rent for storage space, Music elected to treat Brown as a tenant and was, therefore, entitled to recover rent during the time that Brown's property remained in the building.

■ It is true that when a tenant continues in possession, or holds over, beyond the term of a lease, the landlord has the election of treating him as a trespasser or permitting him to remain in possession.[3] If the landlord chooses the latter course, the one holding over again becomes a tenant, on the theory of an agreement arising by implication of law from the conduct of the parties,[4] or by reason of the general principle that where an act may be rightfully done with a certain effect, one may not, in order to avoid that effect, assert that the act was done wrongfully.[5]

An election, however, must be made by the landlord. He may not treat the one in possession both as a tenant and as a trespasser, and once the choice is made it cannot be altered.[6] Thus, if the landlord's actions are more consistent with the concept of trespass than with a continuing tenancy, the one retaining possession of the premises is a trespasser and cannot thereafter be considered as a lessee for an additional term.

That is the situation here. On March 29 Brown was notified to quit and vacate the premises because of non-payment of rent. On April 17 Music sent a second notice which both parties admit constituted a termination of the lease. On April 20 Music rented one-half of the premises to a third party who paid rent from then until November 30. These facts plainly indicate that Music did not treat Brown as a lessee holding over from month to month beyond the termination of the lease. Its actions are inconsistent with the idea of a continuing tenancy. The lease was clearly terminated by Music, and at that moment the relationship of landlord and tenant with its attendant obligations ceased.[7] It could not be revived by Music's unilateral action, as expressed in its notice to Brown of April 17, that it would charge Brown "rent for storage space" if he did not move certain personal property within the specified time. If Music were deprived of the use of a portion of its building by reason of Brown's failure to move the property, then Brown was a trespasser, possibly liable for damages suffered by the landlord.[8] The court below was mistaken in holding that Music was entitled to recover rental at the rate of $325 a month from April 20, 1956 to September 4, 1957—the

---

2. See McCready v. Lindenborn, 1902, 172 N.Y. 400, 65 N.E. 208, 211; Kottler v. New York Bargain House, 1926, 242 N.Y. 28, 150 N.E. 591, 592; Davis v. Wood, 1954, 200 Or. 602, 268 P.2d 371, 378.

3. Willison v. Watkins, 1830, 3 Pet. 43, 49, 28 U.S. 43, 49, 7 L.Ed. 596, 599.

4. Herter v. Mullen, 1899, 159 N.Y. 28, 53 N.E. 700, 701, 44 L.R.A. 703; Gladwell v. Holcomb, 1899, 60 Ohio St. 427, 54 N.E. 473, 475; Grice v. Todd, 1917, 120 Va. 481, 91 S.E. 609, L.R.A.1917D, 512; A. H. Fetting Mfg. Jewelry Co. v. Waltz, 1930, 160 Md. 50, 152 A. 434, 435.

5. 6 Williston, Contracts, § 1856 at 5218, 5219 (rev. ed. 1938).

6. Haas v. O'Connell, 1926, 128 Misc. 22, 217 N.Y.S. 153, 154. And see Taylor v. Kaufhold, 1951, 368 Pa. 538, 84 A.2d 347, 350–351, 32 A.L.R.2d 575; Grice v. Todd, supra note 4, 91 S.E. at page 609.

7. See Willison v. Watkins, supra note 3, 3 Pet. at page 49, 28 U.S. at page 49, 7 L.Ed. at page 599; Huff v. Northern Pacific Ry.. Co., 1951, 38 Wash.2d 103, 228 P.2d 121, 125.

8. Barlow v. Hoffman, 1938, 103 Colo. 286, 86 P.2d 239, 241, 120 A.L.R. 552.

period that the restaurant equipment remained in its building.

■ Damages resulting from the former tenant's failure to surrender possession of the leased premises normally would be the reasonable value of the use of the premises, i. e., their rental value during the period of wrongful possession.[9] Music claims that this should be $325 a month because it was obliged to pay the same amount of rent to its lessor, Nehrbas, for that portion of the building where Brown's property was located. This, Music contends, fixes the reasonable rental value and no further proof of damages is necessary.

This argument might have validity if Brown had actually withheld possession of Music's premises between April 20, 1956 and September 4, 1957. But this was not the case. When the lease was terminated Music was in possession of the premises and it then had the right to remove the equipment left there. Not only did the written lease give Music this privilege,[10] but it had the right, entirely apart from contract, to remove personal property left in its building without being liable for conversion.[11]

In addition, Brown's actions could not be characterized as a refusal to surrender the premises to Music. As early as December 1955 Brown had determined to shut down his restaurant operations. Since Thompson, the president of Music, was away Brown notified Conway, the person whom Thompson had designated as his agent. On December 31, 1955 Brown attempted to deliver the keys to the building to Conway, but he would not accept them. Brown nevertheless left all the keys but one in Conway's office and told him that the place was shut down. He then cleaned up the restaurant, moved out the perishables and locked it up. On February 29, 1956, Brown saw Conway again and told him that he was draining the plumbing fixtures and was moving out whether Conway wanted him to or not. Conway still would not accept the one key that Brown had retained, so Brown turned it over to Nehrbas, Music's landlord. On or about March 29, after Brown had received the notice to quit, he made a final visit to the premises using the key which he borrowed from Nehrbas. He removed from the building what he referred to as "A-1 Sauce and a few little odds and ends that were left there", and then gave the key back to Nehrbas. This was the last time that Brown was on the premises.

These facts made it apparent that by April, when Music had given its second notice to Brown, he had abandoned the premises and had no intention of claiming possession. At any time thereafter it might be assumed that Music could have moved the property out of its building, as it did much later in September 1957. At least Music did not establish that the removal and storage of the property could not have been accomplished in April 1956, and that because this was not done, Music was deprived of the use of that portion of the building. In fact, its own actions would

9. Barlow v. Hoffman, supra note 8, 86 P. 2d at page 241. Annotation, 32 A.L.R. 2d 582 (1953).

10. Paragraph 9 of the sublease provides, in part, as follows:
"* * * if the Sub-Lessee * * * shall neglect or fail to perform and observe any covenant herein * * * the Sub-Lessor may lawfully, immediately, or at any time thereafter, and without notice or demand, enter into and upon said premises or any part thereof, in the name of the whole, and repossess the same and expel the Sub-Lessee, or those claiming under him, and remove their effect, forcibly, if necessary, without being taken or deemed to be guilty of any manner of trespass, and thereupon this demise shall absolutely determine, but without prejudice to any remedies which might otherwise be used by the Sub-Lessor for arrears of rent or any breach of the Sub-Lessee's covenants herein contained."

11. See Pugh v. Hassell, 1952, 206 Okl. 290, 242 P.2d 701, 702; Congregation Anshe Sefard of Keap Street v. Title Guarantee & Trust Co., 1943, 291 N.Y. 35, 50 N.E.2d 534, 535, 148 A.L.R. 647.

be inconsistent with such a claim. In the April 17 notice Music stated that it intended to charge Brown rent for "storage space"; to charge him $325 a month to "maintain" Brown's personal property in its then existing condition. This intent by Music to act as bailee of the property is not compatible with the claim that Brown's failure to remove it resulted in Music's inability to have the use of a portion of its building.

Under these circumstances it would be a fiction to deem Brown in possession or occupancy of the premises between April 20, 1956 and September 4, 1957,[12] and the court below was in error in so holding. Music was not entitled to recover the rental value of the premises for that period of time, and it did not allege or prove that it suffered other damages by reason of Brown's failure to remove the restaurant equipment from the building. Consequently, the court below erred in awarding damages to Music for the period April 20, 1956 to September 4, 1957.

The second question raised on this appeal relates to the contract for the purchase and sale of the restaurant equipment. An oral agreement was made on or about October 1, 1955, at which time Brown gave Music his negotiable promissory note for the full purchase price of $10,000. It was intended by the parties that the agreement would be promptly reduced to writing in the form of a conditional sales contract, but delays were encountered and this was not accomplished until November 29, 1955. The note and contract contained identical payment provisions, i. e., one-third or more of the $10,000 purchase price to be paid on or before the last day of September, 1956, and the balance payable on or before the last day of September, 1957. Possession of the property was delivered to Brown on about October 1, 1955, but title was reserved in Music pending payment of the full purchase price.

Brown made no payments, and was in default after September 30, 1956. As a separate claim in its complaint, Music alleged that because of Brown's default Music had declared the entire principal sum due, which it was authorized to do under the terms of the promissory note; and it sought recovery from Brown of the sum of $10,000 plus interest. The court below found that Music was entitled to this recovery and entered judgment accordingly.

Brown seeks to escape liability for this portion of the judgment. He contends: (1) that since possession to the property passed to him and title was reserved in Music, the transaction was governed by the Uniform Conditional Sales Act [13], and the promissory note, therefore, was executed and delivered without consideration; and (2) that under express provisions of the written contract, Music's only remedy on Brown's default was that of repossession of the chattels, and that it therefore had no right to sue for the purchase price.

■ Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration,[14] and "value" is any consideration sufficient to support a simple contract.[15] The court found, and correctly so, that the oral agreement of purchase and sale, later reduced to writing, and the execution and delivery of the promissory note, were all integrated parts of a single transaction. Therefore, the consideration which supports the contract, i. e., the delivery of possession of the property by Music and Brown's assumption of liability for the full purchase price, is also the consideration which supports the promissory note. The note was nothing more than a written expression of Brown's absolute liability for the purchase price, later repeated in the written contract. To require Brown to give a note prior to reducing the contract to writing was not inconsistent

12. Cf. Mott Pipe & Supply Corp. v. Blue Ridge Coal Corp., N.Y.Municipal Ct.1955, 208 Misc. 601, 146 N.Y.S.2d 607, 612.

13. Sections 29-2-1 to 29-2-30 A.C.L.A. 1949.

14. Section 27-1-31 A.C.L.A.1949.

15. Section 27-1-32 A.C.L.A.1949.

with the existence of a conditional sales agreement with retention of title in Music until the note was paid.[16] Brown, therefore, did not establish absence or failure of consideration as a defense to Music's suit on the note.

■ The written contract provides, in part, that on Brown's default—

" * * * Seller shall be released from all. liability or obligations in law or in equity to transfer or convey said property, or any part thereof, and buyer shall relinquish all rights hereunder, and all monies which he shall have paid heretofore shall be considered as rental for the use of said property up to the time of default; and in such event, the said Buyer shall at once surrender said property to said Seller on demand."

Brown argues that this right to repossess the property is Music's sole remedy under the contract, since no express provision was made authorizing Music to waive repossession and sue for the purchase price instead.

If Music had rescinded the sale and retaken the property, it might have become obligated to credit Brown with the full purchase price [17] or resell the goods and apply the proceeds of the sale to the purchase price.[18] But there was neither rescission nor repossession. At no time did Music claim the right to possession of the property; at all times its actions were consistent with Brown's right to have sole possession and use of the property pursuant to the agreement. Consequently, Music did not waive its primary right, recognized by the Uniform Conditional Sales Act, to enforce liability against Brown for the purchase price.[19] The remedy of repossession provided by the contract was not exclusive; it did not preclude suit upon the absolute and unqualified promise to pay contained both in the note and in the contract.[20] Therefore, to the extent that the lower court's judgment allows recovery on the promissory note, it is sustained.

■ The final argument on this appeal is that Music cannot prevail because it had not fulfilled a condition prerequisite to the maintenance of the action—that of proving it had paid its corporation tax last due and had filed its annual report.[21]

At the trial Music introduced in evidence a certificate of the Assistant Director of Finance for the State, in which he stated that he was custodian of. the corporation records for the State and that "Music, Inc." had paid all corporate taxes due and had filed all required annual reports. Brown argues that this is not sufficient for two reasons: (1) because it was not established that the "Music, Inc." named in the certificate of compliance was the same corporation as "Music Incorporated", the appellant in this case; and (2) because there was no evidence establishing that the Director of Finance had authorized the Assistant Director to issue the certificate.

If a party wishes to raise an issue as to the capacity of a party to sue, he must do so—

" * * * by specific negative averment, which shall include such sup-

---

16. See Bailey v. Baker Ice Machine Co., 1915, 239 U.S. 268, 272–273, 36 S.Ct. 50, 60 L.Ed. 275, 285; Bierce v. Hutchins, 1907, 205 U.S. 340, 348, 27 S.Ct. 524, 51 L.Ed. 828, 834.

17. Section 29–2–26 A.C.L.A.1949.

18. Sections 29–2–19 to 29–2–22 A.C.L.A. 1949.

19. Section 29–2–3 A.C.L.A.1949 provides: "Primary rights of seller. The buyer shall be liable to the seller for the purchase price, of [or?] for installments thereof, as the same shall become due, and for breach of all promises made by him in the conditional sale contract whether or not the property in the goods has passed to the buyer."

20. See Colonial Finance Co. v. Brodsky, 1953, 140 Conn. 391, 100 A.2d 568, 569.

21. Section 36–2A–174 A.C.L.A.1957 Cum. Supp.

porting particulars as are *peculiarly within the pleader's knowledge."* [22]

█ Brown's answer to the complaint denies Music's allegation of compliance with the statute for "want of knowledge or information." This is not sufficient to raise the issue as to capacity.[23] Brown had ready access to the State's corporation records to determine whether or not Music had paid its taxes and filed its annual reports; and if the records disclosed that Music had failed in either of these respects, this could have been pointed out specifically in Brown's answer. Failure to raise the

*issue in the manner specified by the rule results in a waiver of the defense.*[24] Therefore, the court below did not err in finding that Music had paid its corporate taxes and filed all annual reports required for the commencement and maintenance of this action.

The judgment of the district court is reversed in part and affirmed in part, in accordance with this opinion, and the case is remanded to the Superior Court, Fourth District, for the purpose of amending the judgment of December 16, 1959 to conform to this opinion.

22. Fed.R.Civ.P. 9(a), 28 U.S.C.A.

23. See 2 Moore's Federal Practice, § 9.-02, at 1905; Kucharski v. Pope & Talbot, Inc., D.C.S.D.N.Y.1944, 4 F.R.D. 208, 209.

24. Fed.R.Civ.P. 12(h). See 2 Moore's Federal Practice, supra note 23; Trounstine v. Bauer, Pogue & Co., 2 Cir., 1944, 144 F.2d 379, 383; Kucharski v. Pope & Talbot, Inc., supra note 23.