John J. KING and Polaris Drilling Company, Inc., Appellants,

v.

PETROLEUM SERVICES CORPORATION, an Alaska Corporation, Appellee.

No. 2128.

Supreme Court of Alaska.

June 2, 1975.

David B. Ruskin, Anchorage, for appellants.

Thomas P. Owens, Jr., and Richard J. Riordan, Jr., for Owens, Davis & Bartlett, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

PER CURIAM.

Petroleum Services Corporation, the lessor of certain commercial real property, enforced the rental acceleration clause of a lease against the lessee, John J. King, d/b/a Polaris Drilling Company, Inc. This appeal followed.

In October of 1969, Petroleum Services entered into a written lease with Polaris for the rental of warehouse and office space in a commercial building in Fairbanks. The term of the lease ran from December 1, 1969, to November 15, 1974, with a total rent of $43,080 to be paid in monthly installments of $718. In order to make the premises suitable for Polaris, minor structural

modifications were made by Petroleum Services.

From the date of occupancy on or about December 1, 1969, and continuously thereafter, Polaris was in default because it failed to make the rent payments due under the lease. Repeated demands for payment were made by Petroleum Services. In early April 1970, Polaris made a payment of $2,000, thus partially curing the default. Finally, on May 1, 1970, Petroleum Services filed suit, under the rental acceleration clause of the lease, to recover the full amount of rent payable for the entire term of the lease. On May 5, Polaris paid an additional $2,000 of the rent arrearage, apparently believing that Petroleum Services would then drop the legal proceedings. On May 11, Petroleum Services secured a writ of attachment pursuant to which the state police entered the leased premises, removed all of Polaris' personal property, and stored the property in a public warehouse. The writ was subsequently quashed as being constitutionally defective. King, the alter ego of Polaris, was informed by E. A. Eastberg, president of Petroleum Services, in a telephone conversation on June 4, that Petroleum Services intended to proceed with the court action to recover the full amount of accelerated rent. After this, Polaris declined to make any further payments of rent.

Following a nonjury trial, the superior court entered judgment on November 16, 1973, in favor of Petroleum Services for $43,080, the full amount due under the lease, less the $4,000 in payments made by Polaris. However, the court granted Polaris the right to occupy and use the premises for the remainder of the term and the right to receive any rental income derived from subletting the premises. Polaris now attacks the judgment on the following grounds: lack of corporate capacity of the lessor to sue; insufficiency of the notice of default and waiver of the default; improper finding of abandonment; reentry by the lessor as constituting termination of the lease or constructive eviction; and invalidity of rental acceleration clauses.

Polaris contends that Petroleum Services Corporation's failure to allege and prove the payment of its corporation tax and the filing of its annual report resulted in a lack of capacity to sue under AS 10.05.-720.[1] We find this contention to be without merit. Petroleum Services alleged in its complaint that it had paid all taxes and fees necessary to do business in Alaska. In its answer, Polaris failed to deny this allegation. As we held in Brown v. Music, Inc., 359 P.2d 295 (Alaska 1961), failure to raise the issue of capacity to sue results in a waiver of the defense.[2] This conclusion is buttressed by the holding in Richardson Vista Corp. v. City of Anchorage, 14 Alaska 1 (D.Alaska 1952), that compliance with the Corporation Act even after a suit has been filed is sufficient to allow a corporation to maintain an action and to prevent dismissal based on the previous default.[3] Although Petroleum Services did not in fact comply with the requirements of AS 10.05.720 before the commencement of the suit, the corporation did pay the required tax and file its annual report before trial. The holding in Alaska Mines & Minerals, Inc. v. Alaska Industrial Board, 354 P.2d 376 (Alaska 1960), that an erroneous allegation of the payment of corporate taxes does not toll the statute of limitations is limited to the facts of that case.

Polaris next argues that the notice of default was insufficient and that Petro-

1. AS 10.05.720 provides in part:
   No domestic or foreign corporation may commence or maintain a suit, action or proceeding in a court in the state without alleging and proving that it has paid its annual corporation tax last due and has filed its annual report for the last calendar or fiscal year for which the report became due.

2. 359 P.2d at 300–01. In *Brown*, we relied upon Rule 9(a) of the Federal Rules of Civil Procedure, but the same result is dictated by Alaska's present Civil Rule 9(a).

3. 14 Alaska at 4 citing cases from other jurisdictions.

eum Services waived the default. These contentions are also without merit. The trial court found that, as required by the lease, Petroleum Services gave Polaris adequate notice of Polaris' default in the payment of rent. This finding is supported by the record which contains three letters from Petroleum Services to Polaris giving Polaris notice of the default and stating that all rent in arrears was due. As to the contention that the default was waived, the trial court concluded that Petroleum Services took no action nor evidenced any intent to waive the default. We find that the record contains no evidence to the contrary. The lease expressly provided that the lessor's acceptance of rent in arrears was not to be deemed a waiver of any preceding breach except to the extent of the particular rent accepted. Thus, Petroleum Services' acceptance of the $4,000 payment of the past due rent did not constitute a waiver of Polaris' overall default.

■ The trial court found that Polaris abandoned the leased premises and its leasehold interest therein by March of 1970. Polaris argues that this determination was erroneous. The elements of abandonment of real property are an intent to abandon and conduct carrying out that intention.[4] The evidence clearly establishes that an abandonment occurred but not as of March.

Evidence was presented that an agent of Polaris had occupied the leased premises in December of 1969, but that he vacated the premises in March of 1970. The evidence also disclosed that Polaris was experiencing serious financial difficulties in its Alaska operation and that the agent's departure was related to this circumstance. The agent did leave certain items of Polaris' personal property on the premises. Thus, the agent's departure was not an abandonment per se because Polaris still could have intended to use the premises for storage.

But, in addition, Polaris had been continuously in default in the payment of rent since the start of the lease term. Polaris did, however, send $4,000 in payments to Petroleum Services for rent in arrears and for the cost of the modifications of the premises that had been required by the lessee. King admitted in his testimony that he sent the $4,000 partially in an effort to induce Petroleum Services to drop the impending lawsuit. He further testified that he was informed by telephone on June 4th that Polaris' personal property had been attached and that Petroleum Services intended to proceed with the lawsuit to recover the accelerated rent. King described his response as follows:

> . . . to me of course this meant to get back in their [Petroleum Services] wanted $43,000.00 . . . which I wasn't going to pay and I just said to [the president of Petroleum Services] . . . you aren't going to get any more money from me.

The record reveals that after that conversation Polaris neither sent further rent payments nor attempted to use the premises. Under the circumstances, King's June 4th statement amounted to a repudiation of the lease by lessee; intent to abandon the leasehold was manifest at that time. The facts establish that the trial judge was justified in finding that Polaris had abandoned the leased premises and all its leasehold interest therein, but the abandonment dates from June 4, 1970, rather than from March of that year.

As to the next argument presented on appeal, Polaris contends that the reentry by Petroleum Services to remove and store Polaris' personal property constituted a termination of the lease or a constructive eviction. The lease provided that upon any breach by the lessee, the lessor had an immediate right of reentry and the concomitant right to remove all persons and property from the premises and to store the

4. Burr v. House, 3 Alaska 641, 643 (D.Alaska 1909).

property at the lessee's expense. Upon reentry, the lease gave the lessor the option either to terminate the lease or to relet all or any portion of the premises in order to reduce the loss of rental revenue occasioned by the lessee's breach.

The trial court found that a reentry was made by Petroleum Services pursuant to the terms of the lease. The president of Petroleum Services testified that the reentry was made for limited purposes: to protect Polaris' personal property from theft and pilferage and to secure the assets of Polaris in the state. The trial court found that Petroleum Services had in fact been informed of apparent pilferage and loss of personal property from the premises.

■ A lessor's right of reentry under a lease must be reasonably exercised. But a reentry by the lessor following a breach by the lessee does not, of itself, necessarily result in a termination of the lease.[5] We agree with the trial court that under the facts of this case the actions of Petroleum Services were, to a substantial degree, consistent with the interests of Polaris; the reentry protected Polaris' property from being lost through theft. Moreover, the trial court found that Petroleum Services never evidenced any intent to terminate the lease. Nor does the record reveal any other significant indicia of termination.[6] Therefore, on these facts, the reentry did not terminate the lease.

■ Polaris also argues that the entry by Petroleum Services to remove and store all of the lessee's personal property located on the leased premises constituted a constructive eviction. An essential element of constructive eviction is, however, missing on the record now before us. At trial, Polaris offered no evidence that Petroleum Services' reentry and removal of personal property substantially interfered with the lessee's use of the leased premises. For in order to assert a claim of constructive eviction,

> [i]t is essential that the acts complained of shall have actually *interfered* with the lessee's use of the demised premises. Mere apprehension that such use may in the future be interfered with is not enough.[7]

Polaris points to no evidence nor does the record show any evidence of actual interference with Polaris' use of the leased premises. Petroleum Services' reentry was primarily to safeguard Polaris' property and was not the cause of Polaris' abandonment of the premises. Thus, Polaris' claim of constructive eviction fails for lack of proof of an essential element.

■ Finally, Polaris argues that the judgment below should be set aside because rental acceleration clauses in leases are unenforceable. The lease between Polaris and Petroleum Services contained the following acceleration clause:

> In the event of any default whatsoever by Lessee, the entire amount of the balance due and owing of the [total amount payable under the lease] at the time of default shall be due and payable immediately.

There is a split in the authority from other jurisdictions regarding the enforceability of

---

5. Coffin v. Fowler, 483 P.2d 693, 695 (Alaska 1971); Schafer v. Wholesale Frozen Foods, 151 Cal.App.2d 96, 311 P.2d 184, 187 (1957).

6. *See* Coffin v. Fowler, 483 P.2d 693 (Alaska 1971); Groendycke v. Ellis, 205 Kan. 545,

470 P.2d 832, 835 (1970); Chapel-High Corp. v. Cavallaro, 141 Conn. 407, 106 A.2d 720, 722 (1954).

7. 2 R. Powell, Real Property ¶ 225[3], at 235 (1974) (emphasis in original).

such rental acceleration clauses.[8] While this court has not decided the question, we decline to do so here where the enforceability issue was not raised below.[9]

Affirmed.

---

8. Among the cases enforcing rental acceleration clauses are the following: Maddox v. Hobbie. 228 Ala. 80, 152 So. 222 (1934); Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enterprises, Inc., 235 So.2d 344 (Fla.App.1970); Erickson v. O'Leary, 127 Kan. 12, 273 P. 414 (1929); Shepard Realty Co. v. United States Stores Co., 193 La. 211. 190 So. 383 (1939); Pierce v. Hoffstot, 211 Pa.Super 380, 236 A.2d 828 (1967).

On the other hand, courts in New York and California have refused to enforce acceleration clauses. *See, e. g.,* Ricker v. Rombough, 120 Cal.App.2d Supp. 912, 261 P.2d 328 (1953); 884 W. End Ave. Corp. v. Pearlman, 201 App.Div. 12, 193 N.Y.S. 670 (1922). For additional cases from other ju-

risdictions see Annot., 58 A.L.R. 300 (1929); Annot., 128 A.L.R. 750 (1940).

9. University of Alaska v. Simpson Bldg. Supply Co., 530 P.2d 1317, 1324 (Alaska 1975); Padgett v. Theus, 484 P.2d 697, 700 (Alaska 1971); Lumbermen's Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104, 109 (Alaska 1963). We note that the trial court gave the lessee the right of use of the premises for the balance of the term, and as noted in this opinion at page 118, lessee had the right to use the premises during the entire term of the lease. Otherwise, we might have waived the rule in order to consider the rent acceleration clause as well as possible duty of the lessor to mitigate damages.