**Floyd M. ABBOTT, Jr. and Bugs Distributors, Inc., Appellants,**

v.

**SOUTHERN SUBARU STAR, INC., Appellee.**

Court of Appeals of Kentucky.

Dec. 1, 1978.

Henry S. Johnson, Handmaker, Weber & Meyer, Louisville, for appellants.

George E. Morrow, Martin, Tate, Morrow & Marston, Memphis, Tenn., Robert S. Walker, III, Bradford L. Cowgill, Brown, Sledd & McCann, P. S. C., Lexington, for appellee.

Before HAYES, HOWERTON and LESTER, JJ.

LESTER, Judge.

This appeal arises from a final judgment of October 25, 1977, which referred to a default judgment (as to liability of appellants) entered on September 30, 1977, amended on October 4, 1977, and which was based upon CR 37.02.

Appellee, a Texas corporation, brought this action in November, 1975, against appellants for fraud and conversion. Prior to May 25, 1973, both Southern Subaru Star, Inc. and Bug's Distributors, Inc., a Kentucky corporation, had distributorship agreements with an importing firm (Subaru of America, Inc.) for the sale of automobiles to retail dealers in about eight southern states. The two companies decided to enter into a joint venture for the aforesaid purpose and by agreement of the last mentioned date, undertook to do so, operating under the name of Subaru of the South. Star was to receive 78.6% of the profit while Bug's was to have 21.4%. Floyd Abbott was to manage the affairs and conduct the business for the venture. On November 8, 1974, both Star and Bug's surrendered their respective distributorships to the importer and formed yet another corporation, denominated Subaru of the South, Inc., which in turn became the distributor of the vehicles in a number of southern states. South was a Kentucky corporation and Abbott, again, was the chief operating officer. Both Star and Bug's contributed most of their assets to South and the ratio of stock held was 51% Bug's and 49% to Star.

From all outward appearances the business was fairing well until Abbott purchased a jet airplane for approximately one million dollars in December of 1974 in the name of the new company. From this point forward, everything went "downhill," and in November of the following year, Star filed its complaint in the Boyle Circuit Court charging that Abbott and the corporation that he controlled, namely, Bug's, had converted in excess of three hundred thousand dollars from South. Appellants counterclaimed for more than a million.

Through their first set of attorneys, the defendants below filed an answer in which they denied, among other allegations, that the plaintiff was at all times mentioned in the complaint as a Subaru distributor. Not until some two years later after the entry of the default judgment as to liability is there even the slightest reference in the numerous pleadings, interrogatories and depositions to the character, nature or capacity of the plaintiff to maintain a suit.

On December 3, 1976, the court entered an order granting leave to appellants' original counsel to withdraw because differences had arisen between them. Mr. W. A. Wickliffe and Mr. Tebbs S. Moore then undertook the defense of the case which lasted until September 19, 1977, when leave was also granted them to withdraw because of Abbott's failure to pay them a fee or expenses, and because of his attempts to practice the case. It should be noted that on July 21, 1977, the trial court had ordered a pretrial conference to be held on October 4, 1977, and trial set for the eleventh of that month. On the same day (9/19/77) as defendants' lawyers were relieved, the trial judge, by written order in the presence of Abbott, required that he obtain counsel no later than September 23, 1977, that the new lawyer report to the court no later than that date and that the defendants submit memorandum ten days prior to the pretrial conference.

Appellants failed to abide by the court's orders and the default was entered, and in so doing, the judge assigned his reasons.

Rather than our reviewing the problems the circuit court had with Abbott, we think the best resume would be to quote parts of the judgment. After pointing out that defendants below had not requested relief from the original order setting pretrial proceedings (7/21/77), the court said:

In addition, the Court upon a thorough and complete review of the record in this case, finds . . . that as far back as December 10, 1976, defendants having failed to comply with pretrial discovery, caused the plaintiff to seek relief under Rule 37 and that further on March 22, 1977, the defendants' failure to comply with the Civil Rules of Discovery caused the plaintiff once again to seek relief from the Court; that on March 4, 1977, additional relief was sought and granted to the plaintiffs for failure of the defendants to comply with the Rules of Discovery and orders of this Court, that on May 13, 1977, the defendants once again sought relief from this Court which was granted, for the defendants' failure to comply with the orders of this Court relating to discovery which again occurred on July 6, 1977, to which the plaintiffs objected and moved for a default judgment on July 15, 1977 which was overruled by this Court in deference to the defendants.

On September 2, 1977, pursuant to the motion of the defendant, additional time to comply with this Court's orders [was] granted the defendant and finally, on September 13, 1977, it was ordered that the defendants comply with the orders of this Court in preparation for their pre-trial of October 4, 1977, to present pre-trial memorandum although the Court granted the defendant relief from certain other orders of the Court, relating to the payment of Court costs.

On September 16, 1977, this Court allowed the defendants' attorneys to withdraw on the grounds that the defendant was not cooperating with their counsel as well as creating other problems, as contained within the affidavit of counsel filed in support of their motion which was heard on September 16, 1977.

The defendants, on September 23, 1977, filed a certain affidavit together with a letter allegedly written by defendant, Floyd Abbott, Jr.'s doctor.

It is the opinion of the Court, that the allegations contained in the affidavit, and information contained in the letter of the defendant, Bug Abbott's alleged doctor, are on their face insufficient reasons to grant a continuance or to allow the defendant to be relieved from the obligations of filing a pre-trial memorandum as ordered by this Court.

The Court is further of the opinion, that manifest injustice has resulted to the plaintiff as a result of the defendants' repeated failure to comply with the Civil Rules of Discovery and orders of this Court without justification although the Court has, in each instance, overruled the plaintiff's previous motions for default judgment and has in most instances, granted the defendants additional time to comply with the Civil Rules or orders of this Court which the defendants had failed to previously comply with.

However, it has been the policy of this Court for many years to demand strict adherence by parties to litigation, to comply with the orders of this Court in filing pre-trial memorandum using the format provided by this Court.

The Court specifically finds that the defendants have presented no justification in the opinion of this Court for failing to comply with the Court's order to file a pre-trial memorandum and such failure is a material and substantial breach of not only this Court's order, but of the design to have a meaningful pre-trial conference and orderly trial in this extremely complex case.

Because of the breach by the defendants of this Court's order in failing to file pre-trial memorandum, taken in the context of the defendants' repeated failure to comply with the Civil Rules of Procedure relating to discovery and other orders of this Court; the Court hereby SUSTAINS the motion of the plaintiff and ORDERS that the answers of the

defendant herein be stricken and that pursuant to Civil Rule 37 and Civil Rule 55, a default judgment be granted, in favor of the plaintiff on the issue of liability as alleged in the plaintiff's Complaint.

Further, it is ORDERED by this Court, that a hearing on the issues of damages shall be held before the Court, in the chambers of the Boyle County Grand Jury, Boyle County Courthouse, Second Floor, shall be held on October 11, 1977 beginning at 9:00 a. m. in Danville, Kentucky.

The record supports the foregoing.

On the date set for the hearing as to damages, October 11, 1977, the defendants, through their present counsel, filed a motion to dismiss the complaint upon the ground that the appellee had not qualified to transact business in this jurisdiction which disqualified it from maintaining an action in the Kentucky courts. KRS 271A.610. The court entered final judgment and overruled the motion.

Appellants raise the issues concerning appellee's capacity to maintain the action, the court's jurisdiction and abuse of discretion.

KRS 271A.610 provides that any foreign corporation that fails to qualify to do business in this jurisdiction shall be denied the privilege of maintaining any action, suit or proceeding in any court of this state.

Nothing contained in KRS 271A.610 deals with jurisdiction of the circuit courts, but it sets forth the capacity or lack thereof of a nonqualifying foreign corporation to bring suit in our courts. The appellants recognize this principle when they state, in part, in their first issue, "The appellee in this action is barred from this suit, and lacks the capacity to sue, . . ." CR 9.01 requires that:

> When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

■ Prior to the entry of the default judgment, the only references to the capacity of the appellee were contained first, on the complaint where Southern Subaru Star, Inc. alleged it was an authorized distributor; secondly, in the answer where appellants generally denied the foregoing allegation; and, thirdly, in defendant's motion for a bond of costs which contains the following language:

> Defendants state that plaintiff is a foreign corporation and is a non-resident of the State of Kentucky, and as authority for this motion, defendants rely upon the provisions of KRS 453.220 and KRS 453.-225.

We observe that appellant recognized that appellee was a foreign corporation but failed to raise the issue of capacity by reference to KRS 271A.610. In and of itself, this omission would constitute an implied waiver of the defense.

■ At 20 C.J.S. *Corporations* § 1910 at 138, the rule is enunciated that:

> The plea or answer must set up distinctly that plaintiff is a corporation of the kind or class named in the restrictive statute, and the defense must be clearly raised by affirmation of facts which, if proved, bring plaintiff within the operation of the statute prohibiting it from maintaining the action.

And failure to so plead specifically is a waiver of that defense. See also 36 Am. Jur.2d *Foreign Corporations* § 588 at 584.

In *Borderland Coal Sales Company v. Walker*, 208 Ky. 146, 270 S.W. 717 (1925) the rule set out above is contained in the following:

> The ground of the court's action appears to be that the petition does not show that the plaintiff has complied with section 571, Kentucky Statutes, which requires corporations before carrying on any business in this state to file in the office of the secretary of state the statement therein provided for. This is a matter of defense and must be presented by way of answer. It is not ground for a general

demurrer to the petition. *Id.,* 270 S.W. at 717.

This principle has been the law in this jurisdiction as early as 1908, *Kirk-Christy Co. v. American Association,* 128 Ky. 668, 32 Ky.Law Rep. 1177, 108 S.W. 232 (1908), and continues to be so by virtue of CR 9.01 with the further requirement that the "specific negative averment" shall include "supporting particulars."

The Kentucky position is the same as many jurisdictions and we refer to two of somewhat recent origin. In *King v. Petroleum Services Corporation,* 536 P.2d 116, 118 (Alaska 1975), the Supreme Court of Alaska said:

> As we held in *Brown v. Music, Inc.,* 359 P.2d 295 (Alaska 1961), failure to raise the issue of capacity to sue results in a waiver of the defense.

The Alaska statute (AS 10.05.720) denies foreign corporations access to the courts unless certain filing prerequisites are met, much like the Kentucky law. The *Brown case, supra,* relied upon Rule 9(a) of the Federal Rules of Civil Procedure and we invite attention to the cases collected in Notes of Decisions at Fed. Rules Civ. Proc. rule 9, 28 U.S.C.A.

An Illinois case bears certain similarities to the one at bar. In that litigation, *Amerco Field Office v. Onofario,* 22 Ill.App.3d 989, 317 N.E.2d 596 (1974), after an order was entered vacating a default judgment, the plaintiff filed notice of appeal, and three days thereafter the defendant filed a motion in the trial court to dismiss the appeal on the grounds that the plaintiff, a foreign corporation, had never qualified to do business in the state and was thus statutorily precluded from maintaining an action in the courts. The Appellate Court of Illinois, Second District, responded:

> The failure of a foreign corporation to obtain a Certificate of Authority is not a prerequisite to the court's acquiring jurisdiction over the litigation. The failure of the plaintiff to obtain a certificate, if required, is a defense which will be considered waived unless raised by the defendant at the earliest opportunity. In the case at hand, it cannot be said that defendant raised this defense at the earliest opportunity. Accordingly, we believe this defense has been waived and we do not remand.

■ We believe the foregoing disposes of appellant's issue as to jurisdiction, but we would remind them that jurisdiction refers to the power of a court to hear and determine the subject matter of the litigation while capacity deals with the ability of a party to participate in that litigation.

■ Although not submitted for our review, lurking in the background is the issue of whether the doors of the courts may be closed to a foreign corporation when it has been deprived of its goods by tortious acts such as the conversion and fraud alleged herein if and when it has been doing business in this jurisdiction without qualifying to do so. In *Borderland Coal Sales, supra,* 270 S.W. at 717, the court in referring to such a litigant, said:

> The plaintiff may maintain the action to protect its property rights from a wrongdoer, though it has not complied with section 571, Kentucky Statutes.

See also § 14, Constitution of Kentucky.

The judgment is affirmed.

All concur.