No. 45,707

G. M. Groendycke (Alice Groendycke, Executor, Substituted), and Alice Groendycke, *Appellants,* v. Leon H. Ellis, Lydia Ellis, Town and Country Lodge, Inc., a Corporation, and Harry B. Pollak, *Appellees.*

(470 P. 2d 832)

Opinion filed June 13, 1970.

W. *Luke Chapin,* of Chapin and Penny, of Medicine Lodge, argued the cause, and *George B. Powers,* of Foulston, Seifkin, Powers, Smith and Eberhardt, of Wichita, was with him on the brief for the appellants.

*Wayne Coulson,* of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Harman, C.: The issues here are the amount of rent due upon a leased motel property and whether the lease should be forfeited.

The proceeding is a sequel to *Groendycke v. Town & Country Lodge, Inc.,* 202 Kan. 126, 446 P. 2d 730, insofar as the Western

Trails Motel lease is concerned. There, in reversing the trial court, we construed certain provisions of the lease and held that credit for overpayment of rent during the first year could not be carried forward beyond the next subsequent year, and we remanded the case for further proceedings to determine the rights and liabilities of the parties. The present appeal challenges the trial court's judgment rendered after the cause was remanded. Reference is made to the prior opinion for further background facts.

That opinion was filed November 9, 1968. On November 15, 1968, appellants therein (plaintiff lessors in the action and appellants also in this appeal) filed a motion for rehearing. On November 19, 1968, counsel for appellees in that appeal (defendant lessees in the action and appellees also in this appeal) forwarded to counsel for appellants a form of decree conforming to the mandate, entering judgment for appellants for $11,691.20 less a counterclaim of $4,828.82 in favor of appellees, or a net amount of $6,862.38 which appellees contended was the correct amount of rent due appellants under our decision. Appellants' motion for rehearing was denied by this court December 11, 1968. On December 13, 1968, appellants forwarded to appellees written notice of termination of tenancy for nonpayment of rent. On December 20, 1968, appellees delivered to appellants a check for $6,862.38. Appellants refused to accept this check and returned it to appellees and filed their motion in the trial court for further judgment in accord with our mandate. In this motion appellants contended the total amount of rent due was $13,587.73, from which should be deducted appellees' counterclaim of $4,828.82, leaving a net judgment of $8,758.91.

The trial court heard the entire matter on February 7, 1969. The issues presented to the court were the amount of unpaid Western Trails rent and whether the lease had been breached and should be terminated. The only new evidence offered consisted of correspondence between the parties indicating the income and expenses of the motel operation each year and the December 13, 1968, termination notice. No purely factual issue was raised. At the hearing appellants presented a new computation of rent which they contended was then due them under the lease. On February 13, 1969, the trial court accepted appellees' computation of rent due, that is, the sum of $6,862.38, and held appellees were not in default of rent payments on the Western Trails lease on December 13, 1968, (the date appellants served them with the termination

notice) and therefore the lease had not been breached and was not subject to termination for nonpayment of rent.

The first question raised upon appeal concerns the amount of rent due. The lease provided:

"The term shall be for a term of 25 years commencing on the 1st day of April, 1962, and terminating on the 1st day of April, 1987, the consideration for the same to be paid by the Lessees to the Lessors in monthly payments commencing on the 1st day of April, 1962, at $2000.00 and continuing in such amount until the 1st day of April, 1987, it being understood that such monthly rental is intended to be equal to one-twelfth of $24,000, less one-twelfth of one-half of the difference between $48,000.00 and the annual net profit of the motel if such annual net profit shall be less than $48,000, or, in the alternative, plus three-fourths of the difference between the annual net profit and $48,000.00 if such annual net profit shall be more than $48,000.00. If the annual net profit in any one year is less than $48,000.00, then the monthly payments for the subsequent year shall be adjusted accordingly and the Lessees shall receive credit on monthly payments for the overage paid during the year just completed for the subsequent year. When the annual net profit is more than $48,000.00 the difference shall be paid by the Lessees to the Lessors not more than thirty days after the close of the fiscal year, such year to run from the 1st day of May each year to the 1st day of May each year. It is further understood that rental paid shall not be considered in computing the net annual profit."

The amounts of net profit arising from operation of the motel are not in dispute, appellants having accepted the figures submitted by appellees. The rental question arises in this fashion: The motel property included a service station which was rented to the Texaco Oil Company. Texaco paid the station rental to appellees by monthly checks. Appellees in turn forwarded Texaco's rental checks to appellants requesting that appellants endorse and return the checks to them. Appellants kept certain of these checks totaling $4,828.82, crediting them on the rent they contended appellees owned. The trial court initially allowed this amount as a counterclaim in favor of appellees and against appellants. The amount of the counterclaim and its propriety are no longer in dispute.

The parties are in agreement the Texaco rentals are to be considered part of appellees' motel earnings but do not agree as to the method or time when these rentals should be counted as a part of the net profits for the purpose of determining the total rent due under the lease. The trial court, following appellees' suggestion that lessees were on a cash basis and Texaco rentals should not be credited until the end of the 1968-1969 fiscal year, or termination of the lease, ruled that credit for the counterclaim should be given in the accounting of the parties at the end of the then current year,

March 31, 1969. Appellants initially argued they were entitled to have the Texaco rent treated as income to appellees during the years it was actually paid by Texaco for the purpose of enhancing the net profits and thereby increasing the rent. Appellants' later computation as contained in their exhibit 4 presented to the trial court was made in response to appellees' contention they were operating on a cash basis. Appellees say it does not make any difference in the long run when the counterclaim is treated as income. Be that as it may, we think the proper method of computation under the provisions of the lease already set out is as initially urged by appellants and as contained in their computation accompanying their December 13, 1968, notice to appellees to terminate tenancy, or the sum of $8,758.81 as of December 1, 1968. Under this method the Texaco rentals are to be considered a part of the net profits of the motel operation each year, rather than at the end of the 1968-1969 fiscal year, and such rentals withheld by appellants are to be considered as part payment of the rent due. As we understand the matter, appellants retained, and appellees continued to send, the Texaco checks only after dispute had arisen between the parties as to the rent due following the first two years' operation. Having resolved that dispute against appellees in the former appeal, we know of no reason why appellants should be deprived of the benefit of those rentals in determining the total due them.

The principal issue in the appeal is whether appellees have, by their failure to pay rent, breached the lease so as to permit its forfeiture. Several questions are involved in the determination of this issue; the first we shall consider is sufficiency of the notice of termination.

The lease contained the following provisions:

"11. It is further agreed between the parties hereto that if the Lessees shall become in default in the payment of any sums due hereunder for a period of sixty (60) days or more, that the Lessors shall have the right to terminate this lease by giving ten (10) days written notice thereof, and in such event the Lessors shall be entitled to the immediate and peaceable possession of such premises. In such event any sums received hereunder by the Lessors from the Lessees shall be kept by the Lessors as liquidated damages.

"13. Time is of the essence of this lease."

Appellees challenge in several respects the efficacy of the December 13, 1968, notice of termination, but appellants correctly point out that in addition to this notice they had previously, on December 17, 1963, served appellees with written notice of termi-

nation of the lease for, among other grounds, nonpayment of rent and further they commenced this action January 24, 1964, seeking cancellation of the lease for nonpayment of rent and they have continuously sought cancellation in this action, the rent having remained unpaid since April 1, 1964.

We think appellants' position in relying on maintenance of this suit as their notice and demand for forefeiture is well taken. The filing and maintenance of this action by them clearly gave appellees notice of default because of nonpayment of rent and clearly expressed appellants' intent to forfeit the lease because of the default. This positive manifestation of intent gave appellees ample opportunity to correct the default and sufficiently satisfied the notice proviso in the lease (see 51C C. J. S., Landlord & Tenant, § 114 [3]). The December 13, 1968, notice becomes unimportant.

A lessor ordinarily may terminate a lease, pursuant to a forfeiture clause contained therein, for lessee's breach of covenant as to payment of rent. However, the right to forfeiture for nonpayment of rent is subject to judicial control and relief may be granted therefrom where special circumstances warrant denial of forfeiture (51C C. J. S., Landlord & Tenant, § 110a.; § 110c.). An excellent annotation on the subject of relief against forfeiture of a lease for nonpayment of rent may be found at 31 A. L. R. 2d 321. At page 348 the annotator, citing supporting authority, states:

"Wilful, calculated, or persistent failure to pay rent pursuant to the terms of a lease, under circumstances negativing exercise of good faith, may prevent relief from a forfeiture of the lease upon that ground."

And at page 350 we find this:

"Where a default in the payment of rent under a lease occurs and subsists without apparent justification or legal excuse or a showing that it would be inequitable to enforce a forfeiture of the lease, made pursuant to its terms, the lessee is not entitled to relief."

In *Kanakry v. Sayles Finishing Plants, Inc.,* 53 R. I. 455, 167 A. 121, the complainant lessee was seeking relief from a forfeiture declared by his lessor for nonpayment of rent. In affirming a decree against the complainant the court stated:

"The relief sought by complainant is not a matter of right.

"Some facts must be shown which would render it inequitable to permit the lessor to enforce his legal rights. The provision in a lease for a term of years for forfeiture for nonpayment of rent is valid and enforceable . . . and equity will not relieve against a plain violation of a contract without any circumstances of justification or excuse." (p. 457.)

Appellees contend forfeiture for nonpayment of rent should be denied where a good faith controversy exists as to the amount of

rent due and they cite authority for this view, the soundness of which we do not question. Appellees state the parties have been in continuous disagreement as to the rent since the first year of operation of the motel. However, the disagreement has not been over the particular amount due under the lease formula of computation—a matter not free from difficulty—rather appellees have taken the position, as stated in our prior decision, no rent at all was due because of their privilege to carry forward credits into subsequent years, *with the result no rent would be due until 1978.* Appellants argue we responded that such construction by appelles "violates the plain and unambiguous language of the lease provision in question." (*Groendycke v. Town & Country Lodge, Inc.,* supra, p. 129.)

The lease in question here was prepared by appellees. As we pointed out in the first appeal, "It plainly states that if the annual net profit in *any one year* is less than $48,000.00 then the monthly payments for the *subsequent year* shall be adjusted accordingly and the lessees are to receive credit on monthly payments for coverage paid during the *year* just completed for the *subsequent year.* In other words—credit for 'overage' is to be carried forward for only the *subsequent year*—and not beyond." (pp. 129-130.)

In 49 Am. Jur. 2d, Landlord and Tenant, § 143, we find this:

"One who prepares a lease is responsible for the language used, and should not be allowed to demand an interpretation upon a basis different from the language used or different from that of the plain and ordinary meaning of the words used." (p. 171.)

Appellees persisted over a long period of time—since April, 1964 —in refusing to pay any rent as such. We can only characterize this as willful, calculated and arbitrary. The circumstances negative the exercise of good faith. We have examined the entire record relating to this particular lease and the equities inherent therein so far as lessees are concerned and, under the undisputed facts, we find nothing warranting a denial of forfeiture. We think the trial court erred in denying forfeiture and so hold.

The judgment of the trial court is reversed with directions to enter judgment for appellants for forfeiture of the lease and further to recompute the amount of rent due appellants up to the time of such forfeiture in accord with the views herein expressed and to enter judgment thereon.

APPROVED BY THE COURT.

PRICE, C. J., and FROMME, J., dissent from that portion of the opinion ordering a forfeiture of the lease.