## In re VALLEY VIEW SHOPPING CENTER, L.P., Debtor.

### Bankruptcy No. 98–23756–11.

United States Bankruptcy Court,
D. Kansas,
Topeka Division.

April 15, 1999.

Cynthia F. Grimes, Grimes & Rebein, L.C., Lenexa, KS.

David L. Going, Armstrong Teasdale LLP, St. Louis, MO.

Scott J. Goldstein, Kansas City, MO.

Tanya L. Wilson, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO.

### MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the Emergency Motion for Clarification that Automatic Stay is not Applicable and to Prohibit Use of Cash Collateral filed by American National Insurance Company ("American National"), and the Debtor's Motion to Extend Time to Assume or Reject Unexpired Leases. The Court held a hearing on these matters on February 4, 1999. Upon the subsequent filing of briefs by the parties, the Court took the matter under advisement.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(G) and (M).

### FINDINGS OF FACT

American National and Valley View Shopping Center, L.P. ("Debtor") are parties to a lease dated October 31, 1972, as modified December 19, 1987 (the "Lease"), pursuant to which the Debtor leases from American National real property and improvements thereon commonly known as the Valley View Shopping Center (the "Premises").

Pursuant to Section 7.01(a) of the Lease, "default" means and includes the following event or occurrence:

> The failure of Tenant ... to pay the rental, or additional rental on the date due and the continuation of such failure for a period of ten (10) days after Landlord shall have given to Tenant written notice specifying such failure.

Section 7.02 of the Lease sets forth remedies and provides that:

Upon the occurrence of any one or more of the events of default specified in Section 7.01, Landlord may serve a written notice on Tenant requesting that the premises be vacated upon the expiration of three (3) days and Tenant shall then peaceably quit, vacate and return the Leased Premises to Landlord, but Tenant shall remain liable as hereinafter provided.

Section 7.03(a) provides that in case of default, American National may "terminate this lease."

By letter dated December 3, 1998, American National advised the Debtor of its delinquency in the payment of rent and that such was a basis for default under Article VII. The letter stated that:

As of the date of this letter, you are delinquent in payments due for the amount of $135,000 (the "Notice Amount Due") and therefore the basis for a default under Article VII. The Notice Amount Due consists of $135,-000 for arrears in Fixed Rent pursuant to Section 2.02 of the Modification ($27,000/year × 5 years, from 12/1/93 – 12/1/98)), as well as any other amounts due for 1997 percentage rents and any shortfall from the audit report described below, plus any amounts due under §§ 2.03, 2.05 and 2.06 as explained below.

Under § 2.03(e) of the Lease, Landlord has already exercised its right to appoint a CPA to audit Tenant's books regarding the accuracy of all amounts due under Percentage Rent for the years including 19993–1997. Any amounts due for such periods are also due under this Notice. Included in such amount shall be the cost of the CPA's audit based upon Tenant's calculations being incorrect.

Additionally, Landlord demands payment of interest in an amount of 10% per year, as permitted by § 2.06 of the Lease, on all amounts stated above, calculated as of the date such amounts originally became due under the terms of the Lease and Modification.

This Notice does not relieve you of your obligations to pay nor does it relieve you of your obligations with respect to the premises and the condition in which you are required to return the same to Landlord. This Notice shall not be construed as a waiver of any prior notices given by Landlord or its representatives nor of any interest or other charges that may be due under the above referenced lease documentation.

Debtor did not cure the alleged default within ten days. By letter dated December 14, 1998 and captioned "Notice of Termination," American National notified Debtor of its election to "terminate the Lease immediately for [the Debtor's] default under Article VII of the Lease." The Notice of Termination further provided that:

Pursuant to Article VII of the Lease, Landlord has given you ten days to cure non-payment of rent. Because payment was not received with said time period, Landlord therefore demands that you deliver possession to Landlord immediately. If you do not cooperatively turn over the Premises and all necessary keys, access codes and the like immediately, suit may be brought against you to enforce our client's rights in the Premises.

On December 18, 1998, American National filed a Petition for Forcible Detainer in the District Court of Johnson County, Kansas. Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 24, 1998. Debtor has remained in possession of its assets and has operated its business since the filing date pursuant to 11 U.S.C. §§ 1107 and 1108.

### CONCLUSIONS OF LAW

American National asserts that it terminated the Lease on December 14, 1998, prior to Debtor's bankruptcy filing, and

therefore the Lease is not property of the Debtor's bankruptcy estate under § 541(b)(2), and the automatic stay does not apply under § 362(b)(10).[1] In the alternative, American National argues that relief from the automatic stay for cause is warranted because the Debtor cannot assume the Lease pursuant to § 365(c)(3).[2] Debtor argues that the Lease was not terminated prepetition because K.S.A. 58–2507 requires 10 days' notice prior to termination of a lease for a term of more than three months. K.S.A. 58–2507 provides as follows:

> **Termination of lease for three months or longer; notice; effect of payment of rent.** If a tenant for a period of three months or longer neglect or refuse to pay rent when due, ten days' notice in writing to quit shall determine the lease, unless such rent be paid before the expiration of said ten days.

American National argues that by its Notice of Termination letter dated December 14, 1998, it elected the remedy of termination of the Lease, and no notice, other than that given pursuant to the provisions of the Lease, was required to terminate the Lease. American National argues that the operative statute is K.S.A. 58–2509, which provides as follows:

**Notice to quit not necessary, when.** Where the time for the termination of a tenancy is specified in the contract, or where a tenant at will commits waste, or in the case of a tenant by sufferance, and in any case where the relation of landlord and tenant does not exist, no notice to quit shall be necessary.

There appears to be no clear authority determining whether the reference in K.S.A. 58–2509 to "the time for the termination of a tenancy" includes situations where the lease provides for termination prior to its stated expiration date due to a default for failure to pay rent. Thus, the parties disagree as to whether American National was required to comply with the notice requirements of K.S.A. 58–2507.

 In general, a landlord may terminate a lease, pursuant to a forfeiture clause contained therein, for the tenant's breach of a covenant as to payment of rent.[3] However, the landlord's right to forfeiture for the nonpayment of rent is subject to judicial control, and relief from forfeiture may be granted where special circumstances warrant such relief.[4] The Kansas Supreme Court has acknowledged authority for the view that forfeiture for nonpayment of rent should be denied where a good faith controversy exists as to

---

1. Section 541(b)(2) provides that:

 (b) Property of the estate does not include—

 . . . .

 (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case.

 Section 362(b)(10) provides that the bankruptcy filing does not operate as a stay: under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term

 of the lease before the commencement of or during a case under this title to obtain possession of such property.

2. Section 365(c)(3) provides that:

 (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

 . . . .

 (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

3. *Groendycke v. Ellis*, 205 Kan. 545, 549, 470 P.2d 832 (1970).

4. *Id.*

the amount of rent due.[5] In addition, the Kansas courts have recognized that the law abhors forfeitures and have stated that "[t]he law does not favor forfeitures, and their effect is limited by a strict construction."[6]

■ The Court finds that under the circumstances of this case, it would be inequitable to find that American National's notice was sufficient. Even if the Court were to find that the Debtor could and did contractually give up its right to notice and an opportunity to cure under K.S.A. 58–2507, the Court still finds that the notice pursuant to the Lease required an opportunity to cure. Section 7.01(a) of the Lease defines default as:

> The failure of Tenant ... to pay the rental, or additional rental on the date due and the continuation of such failure for a period of ten (10) days after Landlord shall have given to Tenant written notice *specifying* such failure. (Emphasis added).

American National's notice did not "specify" Debtor's failure to pay rent sufficiently enough to allow Debtor an opportunity to cure. In this case, the parties clearly had a dispute regarding the amount due for the percentage rental. American National's letter dated December 3, did not set forth a specific amount due under the Lease. Although Debtor was given ten days to cure the delinquency, there was clearly a dispute as to the amount due, and American National failed to set forth an amount in its delinquency notice.

In *Gallagher v. Borden, Inc.,*[7] the court denied repossession or termination of the lease where the landlord's notice simply advised the tenant that rent was unpaid but did not set forth the specific months at issue. In that case, the lease provided that:

> If said rent, or any part thereof, shall be in arrears and unpaid for over 30 days, Lessors shall give written notice to Lessee of their intent to declare a default under the lease. If within 15 days after receipt of such notice of default, Lessee has failed to correct such default, then Lessors may, at their option, enter said premises and repossess and enjoy the same ...[8]

The court interpreted the lease as providing the tenant with an opportunity to cure a default and stated that coupled with that opportunity is the requirement that the tenant be given notice of the default.[9] The court stated that:

> Inherent in the opportunity to cure a default is knowledge of what is in default. Absent knowledge of what must be corrected in order to avoid the specified penalty, the right to cure the default becomes a meaningless guessing game. Hence, in requiring the Gallaghers to provide Borden with "notice of default," the lease requires that the Gallaghers advise Borden of the specific nature of the default, so that Borden may effectively exercise its rights under the lease to cure the default within the specified fifteen days.[10]

*Gallagher* involved a failure to specify which monthly rental payments were in arrears. The case currently before this Court is even more compelling because it involves disputed percentage rental. American National has appointed a CPA to audit Debtor's books to aid in the determination of the amount due. Although the parties have requested a hearing before this Court to determine the dispute regarding the amount of percentage rental

5. *Id.* at 549–50, 470 P.2d 832.

6. *Norris v. McKee,* 102 Kan. 63, 169 P. 201, 202 (1917).

7. 84 Ohio App.3d 185, 188, 616 N.E.2d 577, 579 (1992).

8. *Id.* at 186–87, 616 N.E.2d 577.

9. *Id.* at 188, 616 N.E.2d 577.

10. *Id.*

due and have alleged that this dispute can be determined at a later date without affecting the matter currently before the Court, the Court finds that the fact that there is a dispute is relevant to the Court's decision in this matter. American National's December 3 notice states that the "Notice Amount Due" includes any other amounts due under various provisions of the Lease, including percentage rents. Clearly, American National's notice did not provide a meaningful opportunity to cure.

■ In reaching this decision, the Court is aware that the parties stipulated, for the purpose of the hearing in this matter only, that the Debtor was in default of the Lease on December 14. However, the Debtor argued that American National's notice failed to specify the amount of percentage rentals due as required in the default clause of the Lease.[11] Because the parties cannot stipulate as to legal conclusions,[12] the Court will interpret the Debtor's stipulation as to the fact that the Debtor was delinquent and had not cured the delinquency on December 14. The Court does not interpret the parties' stipulation as conclusive on the issue of whether or not a "default" as defined in the Lease occurred based on a sufficient notice being sent.

**IT IS THEREFORE ORDERED BY THE COURT** that the Emergency Motion for Clarification that Automatic Stay is not Applicable and to Prohibit Use of Cash Collateral filed by American National Insurance Company shall be DENIED.

**IT IS FURTHER ORDERED BY THE COURT** that the Debtor's Motion to Extend Time to Assume or Reject Unexpired Leases shall be set for hearing on the **7th** day of **May, 1999, at 9:00 a.m.,** at 144 U.S. Courthouse, 500 State Avenue, Kansas City, Kansas.

**IT IS FURTHER ORDERED BY THE COURT** that the parties' dispute regarding percentage rent due under the Lease shall be set for hearing on the **7th** day of **May, 1999, at 9:00 a.m.,** at 144 U.S. Courthouse, 500 State Avenue, Kansas City, Kansas.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

11. *See* Brief of Debtor in Support of Objection to Motion of American National for Clarification Concerning Automatic Stay, filed February 16, 1999, p. 5.

12. Stipulations as to questions of law are not binding on the court or the parties. *In re Scheinberg,* 132 B.R. 443, 444 (Bankr.D.Kan. 1991), *aff'd* 134 B.R. 426 (D.Kan.1992); *City of Lenexa v. Board of County Commissioners,* 237 Kan. 782, 703 P.2d 800, 803 (1985) (stating that neither the court nor the parties are bound by stipulations as to questions of law). The Tenth Circuit has also noted that:

Parties may not stipulate the findings of fact upon which conclusions of law and the judgment of the court are to be based. Parties may by stipulation establish evidentiary facts to obviate the necessity of offering proof, but based thereon the court must itself find the ultimate facts upon which the conclusions of law and the judgment are based.

*O'Connor v. City and County of Denver,* 894 F.2d 1210, 1225–26 (10th Cir.1990) (citing *Platt v. United States,* 163 F.2d 165, 168 (10th Cir.1947)).